**In re Mitchell W. BRYANT, Debtor.**

**Bankruptcy No. C–B–84–00636.**

United States Bankruptcy Court,
W.D. North Carolina.

Dec. 6, 1984.

Joseph Henninger, Jr., Charlotte, N.C. for debtor.

Keith Johnson, Esq., Trustee.

## OPINION

MARVIN R. WOOTEN, Bankruptcy Judge.

This matter came before the Court on its own Order to the Debtor to appear and show cause, if there by any, why this proceeding should not be dismissed pursuant to the substantial abuse provisions of 11 U.S.C. § 707(b). The Debtor appeared by Joseph Henninger, Jr., Esq. Keith Johnson, Esq., appeared as Trustee and Attorney for the Trustee.

## FACTS

The Debtor, Mitchell W. Bryant, on October 24, 1984 filed a Voluntary Petition with this Court under Chapter 7 of the Bankruptcy Code. In the Schedule A–3, Creditors Having Unsecured Claims Without Priority, section of his petition, the Debtor listed the following claims owed to creditors:

| | |
|---|---|
| Berry, Hogewood, Edwards & Freeman, P.A. | $ 512.82 |
| Custom Printers & Design Graphix, Inc. | 10,000.00 |
| First Citizens Bank & Trust Company (MasterCard Division) | 1,038.10 |
| First Citizens Bank & Trust (VISA Division) | 1,034.05 |
| Ford Motor Credit Co. | 9,248.00 |
| Namaco Industries | 21,000,00 |
| Total unsecured, non-priority claims | $42,832.97 |

The Debtor also listed two secured claims totaling $42,260.00. There were no unsecured priority claims listed.

This matter came to the Court's attention after an initial examination of the Debtor's petition, wherein he listed the six obligations set forth above. This examination showed the Debtor's monthly income to exceed his estimated monthly expenses, $3,420.00 to $3,252.00, respectively, and left some $200.00 per month which could have been paid under a Chapter 13 plan to his creditors. Further examination of the Debtor's schedules indicated almost all of his monthly expenses to be greatly inflated. Moreover these expenses included some $400.00 per month of credit card payments which could have been reduced by including them in a Chapter 13 plan. Taken together, these facts indicated that the Debtor could, with only a modicum of restraint, have made payments of at least $800.00 per month under a Chapter 13 plan (totalling $28,000.00 over 3 years or 67% of his unsecured obligations).

Since the Debtor in his petition had failed to denote any of his obligations as being business debts (as required by Bankruptcy Rule 1007(b), Forms 8 and 10, and Local Rule 10(C)), and because the Debtor was seeking Chapter 7 relief where there were indications of a substantial ability to pay his debts, the Court felt a § 707(b) hearing was appropriate.

At hearing the Debtor ignored his secured obligations and reasserted he owed only six debts. He further testified that three of these (to Custom Printers, Ford Motor Credit Company, and Namaco; totalling $40,248.00) were personally guaranteed business debts. He argued that inasmuch as these were not "primarily consumer debts" as contemplated by § 707(b) with respect to *amount,* the Court could not dismiss his case under § 707(b).

The Court at hearing, however, determined the Debtor's home mortgages to be consumer obligations and included them with his other consumer debts. These are as follows:

| | |
|---|---|
| Cameron-Brown Company (First Mortgage on Residence) | $32,260.00 |
| AVCO (Second Mortgage on Residence) | 12,000.00 |
| Berry, Hogewood, Edwards & Freeman, P.A. | 512.82 |
| First Citizens Bank & Trust (MasterCard Div.) | 1,038.10 |
| First Citizens Bank & Trust (VISA Division) | 1,034.05 |
| Total Listed Consumer Debts | $46,844.97 |

Additionally, the Debtor's testimony acknowledged that he had intentionally omitted in his petition a credit line with Wachovia Bank and balances he owed on at least seven to eight credit cards which he possessed at the time of filing. The Court found these to be consumer debts of sub-

stantial amount but the Debtor was unable, or at least unwilling, to identify these or give their amounts. It is therefore impossible to determine with any precision what amounts were owed on these unlisted debts and to whom.

The Court found the Debtor to have non-consumer debts in the following amounts:

| | |
|---|---|
| Custom Printers & Design Graphix, Inc. | $10,000.00 |
| Ford Motor Credit Company | 9,248.00 |
| Namaco Industries | 21,000.00 |
| Total Listed Non-Consumer Debts | $40,248.00 |

Debtor's Statement of Monthly Expenses estimated the average future monthly expenses for his family of four as follows:

| | |
|---|---|
| Rent/Mortgage payments | 671.00 |
| Utilities | 245.00 |
| Food | 500.00 |
| Credit card payments | 400.00 |
| Car Payments (1984 Buick) | 381.00 |
| Transportation | 250.00 |
| Clothing | 500.00 |
| Medical/Drug expenses | 200.00 |
| Laundry | 100.00 |
| Recreation | 100.00 |
| Cable Television | 65.00 |
| Car Rental | 50.00 |
| Automobile Insurance | 50.00 |
| Newspapers | 25.00 |
| Total Estimated Monthly Expenses | $3,537.00 |

The record discloses that the Debtor and his wife own a home located in Mathews, North Carolina with an estimated fair market value of $52,500.00. The property is encumbered by the secured claims of Cameron-Brown Company and AVCO. There is some $8,000.00 of equity in the property, which would be totally offset by the Debtor and his wife's exemptions under N.C. law. The Debtor is employed by Mathews Home Furnishings, Inc; a closely-held business which is owned by his wife. His testimony indicates his family's annual income exceeds $38,000.00; his petition disclosed a monthly income of $3,420.00 or $41,400.00 annually.

## DISCUSSION

Under § 707(b) of the Code, Bankruptcy Judges are authorized to dismiss, sua sponte, cases filed by individual debtors having "primarily consumer debts", where the Court finds that to allow the case to proceed would be a "substantial abuse" of the provisions of Chapter 7. The Bankruptcy Amendments and Federal Judgeship Act (of which 707(b) is a part) failed to define the phrases "primarily consumer debts" and "substantial abuse". The section is of such recent vintage that no published cases have construed the terms.

### I.

The Debtor has not suggested that the words "substantial abuse" should be given anything other than their ordinary, plain meaning and the court so construes them. By this definition, it is readily apparent that this case is one in which allowing the Debtor relief would constitute a substantial abuse of Chapter 7.

It was the philosophy of the constitutional authors and the intent of Congress in establishing the Bankruptcy Code, that this relief was to provide a fresh start for financially troubled persons. Bankruptcy was not intended to provide a means for the unscrupuious to avoid their creditors, but was designed to provide a second chance for persons who for reasons of calamity, sickness, unemployment, and the like were unable to meet their obligations. The case before the Court is not such a case.

First, this case was brought, not because of the Debtor's unemployment or an inability to pay on his part, but because he simply desired to shuck a couple of his debts. His testimony was that he had previously guaranteed a number of business debts and he filed this bankruptcy in order to "get rid" of the same. The Debtor claims he intended to pay his non-business-related debts; however, he seeks relief which would discharge *both* these guaranteed debts *and* his personal obligations.

Secondly, the Court finds on the part of the Debtor an utter disregard of his duties under the § 522 of the Code to truthfully list all of his obligations, his monthly expenses, and to disclose his general financial position to the Court. The Debtor in his petition cited only two credit card debts, one for a MasterCard, the other for a VISA card. However, at hearing, the Debtor stated that he had intentionally failed to list another seven or eight cards, claiming he didn't think them to be of significant amounts (The cards listed for MasterCard and VISA were stated to have balances owed of $1,038.00 and $1,034.05 respectively). However when it came time to set out his monthly expenses, the Debtor reconsidered this opinion and revalued these insignificant debts, claiming payments on these unlisted cards to be $400.00 *per month.* When pressed to account to the Court for the reasons for these discrepancies and the source of these obligations and their amounts, the Debtor was conveniently unable to remember. As a result, the Court is unable to determine what amounts are owed on these unlisted debts, if any, and where the future payments allocated to these obligations would go. Such selective disclosures and recollections act a fraud upon the Court and are fatal to any chance of rehabilitating a debtor while still doing equity to his creditors. As such the Court will not tolerate them while at the same time shielding the Debtor from those whom he rightfully owes.

In like measure, the Debtor has so muddied his financial waters that the Court is unable to determine the extent of either of his assets or debts, or his income and expenses. Apart from the aforementioned omissions, there exists such an interlocking financial relationship between the Debtor and his employer (which in effect is his wife) that it is difficult to separate their finances. This is clearly seen from the debtor's "company car" situation. The Debtor claims to pay only a nominal $50.00 per month for his personal use of this vehicle, but also claims huge monthly upkeep costs for the same. (No further evidence showing, the Court presumes that a substantial part of the Debtor's $250.00 maintenance fees are attributable to this vehicle). One would ordinarily expect slight use to be accompanied by small expenses, but the Debtor operates differently. Under these circumstances, the Court can only wonder how much of these expenses and others which he cites are actually debts for which his employer ought to be accountable.

Third, it is the opinion of the court that the Debtor's Statement of Monthly Expenses filed with his petition was done in bad faith and that these amounts were greatly overstated with the intention of misrepresenting his financial picture. For example, he avers that his average monthly expenses for feeding himself, his wife, and his two children exceeds $500.00, (excluding dining out for which he allocates another $100.00). The Debtor submits that maintaining his wife's 1984 Buick and his personal use of a "company" car costs better than $250.00 per month, discounting car payments ($381.00), rent ($50.00) and auto insurance ($50.00). Likewise, the Debtor informs the Court that while his family has no recurrent medical expenses (apart from one set of braces), his monthly medical bills exceed $200.00. Even his most diminutive bills take on gargantuan proportions—he claims to spend $100.00 per month for laundry costs although the family owns a washing machine.

Even assuming arguendo these figures to be appropriate, the nature and extent of the Debtor's expenses makes his attempt to maintain this standard of living while in a Bankruptcy proceeding rather suspect. Consider that the Debtor's family has for its personal use both a 1983 Buick and a 1984 Buick. To maintain these vehicles costs the Debtor's family some $731.00 per month ($351.00 car payment on the 1984 Buick; $50.00 car rental to his wife's family; $250.00 maintenance and gas; and $50.00 car insurance). This is more than most families spend on home mortgage payments. Were the Debtor to eliminate just one of these vehicles and to apply the savings to a Chapter 13 plan, as much as

$400.00 per month would be available to satisfy his debts.

In like measure, the Debtor claims expenses of $100.00 per month for dining out and for going to movies. He claims another $65.00 per month for cable television. Even if these amounts are accurate, the Court has serious questions about their appropriateness for a Debtor in Chapter 7. While Congress intended to give the Debtors relief in such cases, it was not the design of the Bankruptcy laws to allow the Debtor to lead the life of Riley while his creditors suffer on his behalf.

Therefore, in light of the Debtor's purpose in filing this petition; his fraudulent and misleading omissions in his petition; his attempts to pad his expenses statement in order to misrepresent his financial position; and the relatively exorbitant lifestyle which he seeks to maintain while taking shelter from his creditors under the Bankruptcy provisions, the Court concludes that to allow this petition would be a substantial abuse of the provisions of Chapter 7. The Bankruptcy Courts have their foundations in the Courts of Equity, and here the clean hands maxim applies: To receive equity, one must do equity. This the Debtor has not done.

## II.

 In considering dismissal under 707(b) the Court must, in addition to finding "substantial abuse" determine that the Debtor's obligations were also "primarily consumer debts". As with substantial abuse, what constitutes "primarily consumer debts" was not defined in the Code and has yet to be determined by case law. Debtor's attorney has urged the Court that a Debtor has primarily consumer debts if and only if the aggregate amount of the Debtor's consumer debts exceeds the amount of his nonconsumer debts. The Court cannot agree with such a narrow interpretation. Certainly the relative aggregate amounts of consumer versus nonconsumer debts are important considerations, but they are by no means the only way by which a court can find a case to involve "primarily consumer debts." Given the numerous instances in the Code where Congress has established specific bench marks to guide the Bankruptcy Court, I can only conclude that had it intended to narrow this definition as Debtor suggests, it would have so stated in the Code provisions. That lacking, it is my firm impression that Congress intended to leave the definition of this term to the Bankruptcy Judge who has the case file before him and who can make the decision in light of all the facts and circumstances presented. Given this flexibility, the Court concludes a debtor's obligations may be adjudged "primarily consumer debts" not only by the aggregate amount but by their relative number as well.

This certainly is a case involving primarily consumer debts. The Court has found the Debtor's consumer obligations to include his home mortgages and to total $46,844.97. (To this should be added his unlisted credit card debts which are of uncertain amount.) On the other hand, his nonconsumer debts total only $40,248.00. The Debtor's consumer debts outweigh his nonconsumer debts by more than seven thousand dollars and dispel the Debtor's motion that these are by amount nonconsumer debts. Similarly, with regard to number, at least twelve of the Debtor's fifteen or sixteen obligations are consumer debts, and in this respect, also, his case is one involving primarily consumer debts.

## CONCLUSION

 The case at hand involves acts of a Debtor in conscious disregard of the Bankruptcy provisions; his fraudulent attempts to hide his debts and distort his financial circumstances; and his bad faith effort to avoid paying his creditors. These obligations are, to the extent ascertainable, primarily consumer debts with respect to number and amount. The Court is therefore of the opinion that this is a case of substantial abuse of Chapter 7 and hereby dismisses the same under § 707(b) of the Code.

IT IS SO ORDERED.