**In re Keith Edward WHITE, (SSN: 244–25–5279), Debtor.**

**Bankruptcy No. ST–B–85–00019.**

United States Bankruptcy Court,
W.D. North Carolina,
Statesville Division.

May 30, 1985.

Thad A. Throneburg, Charlotte, N.C., for debtor.

Albert Walser, Statesville, N.C., for creditor, Julia Harley Long.

## ORDER

MARVIN R. WOOTEN, Bankruptcy Judge.

THIS MATTER coming before the Court on its own Order to the Debtor to appear and to show cause, if there be any, why this proceeding should not be dismissed pursuant to the substantial abuse provisions of 11 U.S.C. § 707(b).

## FACTS

Prior to this bankruptcy, the Debtor, Keith Edward White, while driving home from the grocery store was involved in an automobile collision with one Julia Harley Long. This accident resulted in Ms. Long being seriously and permanently disabled; and while she was employed prior to this accident, Ms. Long is now unable, and in all probability will be permanently unable, to work.

Subsequently, Ms. Long filed suit against Keith Edward White in the North Carolina Superior Court, Iredell County, North Carolina, seeking recovery for the personal injuries which she sustained. Judgment was returned on November 8, 1984 in favor of Ms. Long in the amount of $400,000.00. White's insurance company paid against this Judgment amount, $25,-000.00, or the full policy amount of his insurance coverage. There remains some $375,000.00 outstanding on account of this debt.

On January 31, 1985, Keith Edward White filed a voluntary petition with this Court under Chapter 7 of Title 11. His petition lists only one debt, the $375,000.00 obligation to Ms. Long. His Schedule of Income and Expenditures discloses an excess of $130.77 per month of income over expenses, plus an additional $64.00 per month which the Petitioner contributes to his church. In total, the Debtor has about $195.00 per month which could be paid towards his obligations.

The Petitioner, Keith Edward White, is nineteen years old. He presently lives with his parents, and his earnings augment their limited income (the Petitioner's father's income consists entirely of disability payments of about $500.00 per month; his mother's weekly income is $35.00). The Petitioner is a high school graduate employed as a clerk with C.C. Dicks Air Conditioning Company.

## DISCUSSION

This case presents the Court with the issue of what constitutes a "substantial abuse" of Chapter 7, Title 11 of the U.S. Code. In considering this issue, this Court is presented with the subissue of what constitutes a "consumer debt" under § 707(b) and § 101(7) of the Code.

Section 707(b) provides:

"After notice and a hearing, the court, on its motion and not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this Chapter [Chapter 7, Title 11] whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this Chapter [Chapter 7]. There shall be a presumption in favor of granting the relief requested by the Debtor."

The substantial abuse provision of the Bankruptcy Code was enacted with the Bankruptcy Amendments and Federal Judgeship Act of 1984. As previously noted by this Court, the Amendments Act fails to define the terms in question today, and, indeed, there is little legislative history accompanying this provision. In like mea-

sure, due to of the section's recent vintage, there is scant case authority interpreting this legislation.

## I.

■ The initial question for this Court is whether this Petitioner's sole obligation—a Judgment debt arising from an automobile accident attributable to the Petitioner's negligence—is a "consumer debt" as defined by § 101(7) of the Code. The Court is of the opinion that it is not and, accordingly, finds § 707(b) to be inapplicable to this case.

Ms. Long has argued with great persuasiveness that inasmuch as the Petitioner was operating his vehicle for personal purposes when this accident occurred, the attendant liability for his negligent operation is likewise a "consumer debt." The core assumption of this argument is that when one has a personal objective in mind, any liability cast upon the person with respect to this objective is a consumer debt, no matter how unforeseeable it was and irrespective of whether that person intended to assume the liability. In short, with respect to the operation of a motor vehicle, Ms. Long would categorize accident liability identically with liabilities for gasoline for the automobile. As both relate to a personal use, both are consumer debts within her definition of the term.

Although the term "consumer debts" includes personal expenditure debts, the Court cannot concur with such an expansive interpretation. Section 101(7) defines a consumer debt to be a "debt incurred by an individual primarily for personal, family, or household purposes." 11 U.S.C. § 101(7). The key words in this definition are "incurred", "primarily" and "purpose". In general, to *"incur"* an obligation is to meet with it, to become liable to or to bring it down on oneself. For an incurrence to have been *"primarily"* for a personal purpose means that this incurrence was of the first importance or was fundamental. To have a *"purpose"* is to have an intention or an object set before oneself as an aim.

*Webster's New Collegiate Dictionary (1958).*

■ Thus, to be a consumer debt within the meaning of § 101(7) the liability must have been acquired first and foremost to achieve a personal aim or objective. An automobile accident liability is not such a debt. Here the obligation was incurred *incidental to* and not *first* and *foremost* to achieving the personal aim; which was gaining transportation. The gas debt cited by Long would be a consumer debt in the sense that the Petitioner incurs it in order to acquire transportation. However, this accident liability is *not* a common debt, because the Petitioner, while negligent, aimed only to gain transportation and not to do another person bodily harm by his use of this vehicle. The two situations are distinguishable in the acting party's primary purpose.

Moreover, there is no evidence of a congressional intention to give the consumer debt definition such an expansive scope within the parameters of § 707(b). On the contrary, the sparse legislative history, implies that a more narrow interpretation is favored. The consumer credit amendments, of which § 707(b) is a part, were the offspring of congressional concern that credit costs were being driven upwards by the ready availability of discharge via Chapter 7 to persons seeking to sidestep *consumer credit obligations* who had the ability to pay. It was feared that such practices were causing consumer credit rates to rise above the ability of lower and middle-income citizens to afford credit. 130 Cong.Rec.HR. 10 (Daily ed., March 21, 1984). The consumer credit previsions were enacted to prevent such misuse of the bankruptcy system by persons not suffering economic hardship by denying them persons relief under the Code. 130 Cong. Rec.HR. 7497 (Daily ed., June 29, 1984).

While the consumer credit amendments and § 707(b) were designed to prevent abuses, there is no legislative history indicating that any obligations other than consumer credit debts were to be affected. Moreover there is no indication that the

general category of personal injury debts was meant to receive different treatment, as a class than other obligations. For examples, the 1984 Act also changed the Code to make drunk driving liability nondischargeable per se § 523(a)(9). Congress' simultaneous silence regarding general personal injury indicates that the omission was not due to oversight but was a decision of Congress not to make such a categorization regarding personal injury liability. It would therefore be an over expansive interpretation of this statute to construe it to encompass such debts.

For these reasons, it is therefore the conclusion of this Court that this debt is not a "consumer debt" as contemplated by § 707(b) of the Code. Consequently, the substantial abuse provisions do not apply to the administration of this case.

## II.

In addition to considering the type of debts which this Debtor possesses, the Court must determine whether allowing relief to this Petitioner would constitute a "substantial abuse" of the provisions of this chapter. In reaching this decision, it is important to note that § 707(b) establishes a presumption in favor of granting the relief prayed for by the Petitioner. 11 U.S.C. § 707(b).

The term "substantial abuse" is not defined in the Bankruptcy Code nor in the abbreviated legislative history accompanying the Bankruptcy Amendments and Federal Judgeship Act provisions. This Court has, in a prior ruling, elected to accord the term its ordinary, everyday meaning. (See *In re Bryant*, 47 B.R. 21 (1984), and abides with that decision in this case.

As this term is not limited, in interpreting "substantial abuse", it is appropriate that the Court consider the totality of the circumstances presented, including the effects upon the petitioner *and* his creditors should relief under Chapter 7 be granted, or alternatively, denied. It is likewise appropriate to bear in mind the general aim of the Bankruptcy Code to provide a fresh start for a Debtor, while doing equity to and among his creditors, as well as the limitations to the relief that Bankruptcy affords a Debtor and his Creditors.

In considering this Petition, the record evidences the following: The Petitioner has no debts, save and except the Judgment in favor of Ms. Long. He has few assets of negligible value and owns no real property. He lives at home, pays no rent, but attempts to help his parents financially (although no provision for such expenses was made in the schedules accompanying this petition) when their meager income falls short. The Petitioner has a high school education and has recently become employed as a store clerk. His income exceeds his estimated expenses by about $130.00 per month. He is unmarried and is eighteen years old. In short, while most debtors come before this Court seeking a fresh start, this Petitioner is laboring to make his first start, and he has already severely impaired his ability to do so. He carries a large financial liability and the moral burden of knowing that his negligence has resulted in the maiming of another person.

This individual has filed a petition under Chapter 7 of the Code. Should the Court find him to be entitled to relief under this Chapter, he will almost certainly step out from under this judgment via discharge. Under § 524 of the Code, this financial burden will be removed, and the Petitioner will have the opportunity to build a life for himself and generally to improve his lot. His *fresh* start will be obtained, although in substance it will be an unencumbered *first* start.

Conversely, if this case is dismissed, the Petitioner must elect between two unsavory options. First, he can remain outside the protection of the bankruptcy system, leaving himself liable for this Judgment. He would then labor, without incentive and without the opportunity to improve his position that is so fundamental to what is referred to as the "American way of life". For this individual could rest safe in the knowledge that practically any and all

fruits of his labors for the next ten years (at a minimum) could, and likely would, be taken from him to satisfy this debt. He would have little incentive to work and might well become no more than a ward of the State.

Second and alternatively, this Petitioner could refile a Petition under Title 11. Since the total amount of his secured debts ($375,000.00) exceeds the jurisdictional amount for Chapter 13, such refiling would have to be under Chapter 11 of the Code. 11 U.S.C. § 109(e). The Chapter 11 reorganization provisions in turn would demand confirmation of a plan under § 1129, and this would require acceptance by his creditors or cramdown (Ms. Long being the only creditor at present, her acceptance would be required). In short, the Petitioner would have to satisfy Ms. Long's demands and conditions in order to get relief in bankruptcy. This would likely mean that he would have to agree to pay most if not all of this Judgment—over what could be a substantial and perhaps unlimited number of years. And again, the Petitioner's incentives to work and support himself would be destroyed and his fresh start denied.

At first blush, this concern for the Petitioner's future welfare seems callous with respect to the interests of the victim of the accident, Ms. Long, and due consideration must be given to her interests. For it is doubtlessly true that she has suffered because of this Petitioner's negligence. Ms. Long has been done grave physical injury and endured pain and suffering that pecuniary compensation cannot cure. She has lost the ability to work and to earn a livelihood and must now look towards other means.

However accepting the obvious fact that this creditor has been substantially harmed, what restitution can this woman gain from a dismissal of this petition that she would be denied if the same is allowed? Obviously, this Court cannot issue a decree and alleviate her physical disabilities or her pain. She will bear these in either event.

A more obvious assertion is if the Petitioner is denied relief, Ms. Long would retain a Judgment which could reach to the Petitioner's future property. Yet where is the value of this? While this would be more savory to her than having the debt discharged, nevertheless, such a Judgment is presently valueless. This Petitioner has almost no property, and his income as compared to his nominal expenses is small. While it is perhaps likely that the Petitioner's income will increase over time, given his reduced expenses and his familial obligations, it is almost certain that his expenses will increase significantly as well. This, when coupled with the aforementioned disincentives to working to "get ahead" in the face of such a Judgment makes it almost certain that this creditor will not receive any material financial recovery in the near future. Rather, with this Petitioner in bankruptcy or not, Ms. Long will have to look elsewhere—to her insurance, her family, or the government—to meet her needs. This is not an endorsement of the Petitioner's deeds, but a cold hard fact that must be considered along with the deleterious effects of this Judgment on the Petitioner.

In addition to the Petitioner and Creditor's circumstances, this Court in judging cases under § 707(b) has heretofore considered the Petitioner's excess income and the amount he could have paid in a Chapter 13 case over a plan period of three years. This is compared to the total debt amount to determine whether such future payments would be material with respect to the debt. A large excess income amount or the ability to pay a significant amount of such debts is of course, considered indicative of substantial abuse.

In this case, Chapter 13 is unavailable to this Petitioner, and the appropriate comparison is to Chapter 11. And as described above, were this Debtor to file under Chapter 11 he would, due to the § 1129 plan confirmation requirement in effect be working for this creditor until the Judgment was paid off or she agreed otherwise. Accordingly, the appropriate consideration is "how long would it take this individual to pay off this debt in a Chapter 11 plan? In

the case before the Court if we assume the Petitioner's maximum excess income of $195.00 per month were paid into a plan, the Petitioner could pay some $2,340.00 annually towards this debt less costs and expenses of the Chapter 11 proceeding. Further, assuming compound interest at 10% on this Judgment of $375,000.00, it becomes clear that he could *never* pay this Judgment off. His annual payments, would not even cover ten percent of the *interest* accruing on this sum. Perhaps more importantly, these payments would not even begin to cover Ms. Long's living expenses which are substantial.

■ A third consideration in this case is the inherent limitations of § 707(b)'s scope. Section 707(b) was not intended to apply in all cases to effectively strong-arm potential debtors into other Chapters of this Title. This is obvious from the wording of the section. The dismissal option of § 707 is not available in all Chapter 7 cases or even in all cases where a creditor is harmed but is granted *only* where there exists a *substantial* abuse. Implicit in this term is some type of an unfair advantage that is obtained by the Debtor because of his filing as against his creditors. Yet no such unfair advantage is seen in this case rather all parties are losers—the creditor by her injuries; the Petitioner by being forced into the ignominy of bankruptcy. While granting relief might not favor this creditor, the Court cannot say it would substantially abuse her.

■ While it may be argued that this type of debt ought not be discharged in bankruptcy for moral reasons, this Court's decision is to be based on law and not personal moral judgments. Congress has failed to provide in law that personal injury liability is nondischargeable. Moreover, while Congress has made drunk driving liabilities nondischargeable under § 523(a)(9), it has made no such provision for general automobile personal injury liabilities. It having spoken to this extent, the Court must conclude that had it intended this result, § 523 would have excepted such debt from discharge. In the absence

of such a statement, and in light of the § 707(b) presumption favoring the grant of relief, the Court cannot deem this case a "substantial abuse" simply because it is a personal injury liability.

■ Therefore, in light of all the circumstances seen as an undivided whole, the Court concludes that the facts presented fail to indicate that relief would be a substantial abuse of Chapter 7. This Petitioner has few assets, little excess income, and only an average prospect of future increases in earning ability. To deny him relief under this Chapter would net this creditor little more than vindication and would make this Petitioner little more than an indentured servant. Although it may be argued that these debts in general should not be discharged in bankruptcy for public purpose reasons, such a broad policy is a determination that Congress should make. It has not, and in its silence, the Court cannot presume these debts to be nondischargeable or abusive per se, but must consider them in light of all the attendant circumstances. Taking these as a whole, it is the conclusion of this Court that granting this Petitioner relief under Chapter 7 would not be a substantial abuse of the provisions of the Chapter. It is further concluded that this Petitioner's obligation is not a consumer debt within the meaning of § 101(7) so as to make § 707(b) applicable at all.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Petitioner be granted relief under the provisions of Chapter 7.