**In re George Robert BELL, Debtor.**

**Bankruptcy No. 85–02150–R.**

United States Bankruptcy Court,
E.D. Michigan.

Jan. 13, 1986.

Iris Rubin, Southfield, Mich., for debtor.

## ORDER DISMISSING DEBTOR'S CHAPTER 7 PETITION

STEVEN W. RHODES, Bankruptcy Judge.

### I.

On June 26, 1985, George Robert Bell filed this voluntary petition under Chapter 7 of the Bankruptcy Code. Following a review of the debtor's petition, the Court, *sua sponte,* issued an order to appear and notice of hearing pursuant to 11 U.S.C. § 707(b), because the Court was concerned that the granting of relief may constitute a substantial abuse of the provisions of Chapter 7 of the Bankruptcy Code.

The evidence before the Court consists of an Amended Schedule of Current Income and Current Expenditures, filed on October 28, 1985; an affidavit executed by Emma Bell, the debtor's wife, filed on November 14, 1985; and the testimony and exhibits submitted by the debtor at the hearing on October 29, 1985. This evidence indicates that the debtor's current net pay is $3,136.20 per month, pursuant to an employment contract (Exhibit D) entered into in 1983 pursuant to which the debtor became president of the Wayne County Community College. However, he no longer serves in that position. Rather he is on the faculty and teaches. His contract expires in February of 1986, and he has no reason to believe that it will be extended. An instructor with his teaching load would earn approximately $40,000, and he has begun to look for other work in education. His paycheck stub (Exhibit E), shows deductions for FICA, federal income tax, state income tax, city income tax, and a voluntary tax exempt annuity. Bell testified that after July or August of each year, the bi-monthly FICA deduction of $218 is no longer deducted. The voluntary annuity deduction is $410 bi-monthly.

His expenses are as follows:

| | |
|---|---|
| Home Mortgage Payment | $ 400 |
| Utilities | 235 |
| Food | 480 |
| Clothing | 75 |
| Laundry and Cleaning | 130 |
| Newspapers, etc. | 10 |
| Medical and Drug Expenses | 10 |
| Home Insurance | 17 |
| Transportation, Gas, and Car Maintenance | 608 |
| Recreation | 100 |
| Property Tax | 133 |
| Child Support | 375 |
| Condominium Dues | 60 |
| Condominium Special Assessment | 50 |
| Total | $2,683 |

The automobile transportation expense of $608 consists of $450 per month for a lease payment on a 1984 Audi, including taxes and insurance. The balance of the transportation expense consists of $20–25 per week for gas, $5 per week for car wash and $8–10 per week for maintenance. He drives approximately 150–175 miles per week.

His recreation expense of $100 per month consists of six hours of racquetball per week at $6 per hour and movies with his son. The affidavit of Emma Bell, the debtor's wife, from whom he is separated, indicates that Bell voluntarily contributes to her $300 per month for his son's support and $75 per month for clothes and allowance. Bell further testified that the special assessment of $50 per month would expire at the end of 1985.

Regarding the expenditure of $480 per month on food, Bell indicated that this consists of approximately $50 per month at the grocery store and the balance is for eating out at restaurants. He testified that he eats essentially all of his meals at restaurants since he is away from home from the early morning until the late evening.

Bell further testified that he filed bankruptcy because his grocery business, Bell Market Inc., which has also filed a Chapter 7 petition, was unsuccessful and he had put his personal funds into it. He had had no trouble with his debts previously. He also had a consulting company which was unsuccessful.

The Michigan National Bank has a third mortgage on his home resulting from a $100,000 loan to his business which he personally guaranteed. Although it is unlikely that this debt will be paid, it is not clear to him that the bank will foreclose this third mortgage.

In his schedules, the debtor indicated a first mortgage on his condominium to the Bank of the Commonwealth (Comerica) in the amount of $33,000; a second mortgage to the City of Detroit-Community and Economical Development Department in the amount of $15,000; and a third mortgage to the Michigan National Bank for the personal guarantee in the amount of $104,000. Thus the total on Schedule A–2 for creditors holding security is $152,000.

In Schedule A–1, the debtor disclosed $5,477.12 in taxes owing to the United States.

On Schedule A–3, the debtor disclosed unsecured debts of $81,281.28.

On Schedule B–1, the debtor disclosed that his condominium has a market value of $60,000.

In Schedule B–2, the debtor disclosed personal property worth $29,200, including approximately $13,200 in individual retirement accounts and the above-mentioned tax exempt annuity.

On Schedule B–4, the debtor claimed as exempt his annuities, home, furnishings, and jewelry.

On October 28, 1985, the debtor filed an application to amend the schedules and added an unsecured debt in the amount of $43,486, raising the total of the unsecured debt to $127,459.52.

## II.

11 U.S.C. § 707(b) provides:

After notice and a hearing, the court, on its own motion and not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are

primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

This section was added to the Bankruptcy Code by Section 312 of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Public Law 98–353.

It is clear from the debtor's petition and from his testimony at the hearing that his debts are "primarily consumer debts"; the debtor does not seriously contend otherwise. *See:* 11 U.S.C. § 101(7) and *In re White*, 49 B.R. 869 (Bankr.W.D.N.C.1985). Accordingly, the Court so finds. Thus the only issue is whether the granting of relief would be a "substantial abuse" of the provisions of Chapter 7.

## III.

The term "substantial abuse" is not defined in the Code. However, the Court can seek guidance from several prior cases which have addressed this issue.

In *In re Bryant*, 47 B.R. 21 (Bankr.W.D. N.C.1984), the Court held that the term "substantial abuse" should be given its ordinary, plain meaning. After reviewing the circumstances of the debtor's financial position, and noting the debtor's "relatively exorbitant life style", the court dismissed the petition.

In *In re White, supra,* the Court held that, in determining whether there is substantial abuse, it should consider the totality of circumstances presented, including the effects upon the petitioner and his creditors should relief under Chapter 7 be granted, or alternatively, denied. Specifically, the Court noted:

In addition to the Petitioner and Creditor's circumstances, this Court in judging cases under § 707(b) has heretofore considered the Petitioner's excess income and the amount he could have paid in a Chapter 13 case over a plan period of three years. This is compared to the total debt amount to determine whether such future payments would be material

with respect to the debt. A large excess income amount or the ability to pay a significant amount of such debts is of course, considered indicative of substantial abuse. 49 B.R. at 874.

The Court further noted, "Implicit in this term ['substantial abuse'] is some type of an unfair advantage that is obtained by the debtor because of his filing as against his creditors." *Id.* at 875. Finally, the Court noted that where a debtor is ineligible to file a petition under Chapter 13 under 11 U.S.C. § 109(e), it is appropriate to look to the possibility of a Chapter 11 petition. *Id.* at 874–75.

In *In re Edwards*, 50 B.R. 933 (Bankr.S. D.N.Y.1985), the Court held with respect to a proceeding under Section 707(b):

It is to be used to deny Chapter 7 relief to those persons whose pleadings in the form of the petition, schedules, statement of affairs and statement of income and expenses fail to reflect a need for the relief being sought because they do not reflect that the debtor is now suffering or will suffer in the near future from any meaningful economic hardship. 50 B.R. at 936.

After reviewing *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), the Court held, "It is reasonable to conclude that a debtor whose income and reasonable expenses indicate that he could pay over three years an amount equal to 100% of the principle owed to his creditors, is not suffering from sufficient economic hardship to warrant use of Chapter 7." *Id.* at 937. In an extended footnote to this statement, the Court developed the premise that Section 707(b) was not intended to address abuses resulting from fraud by the debtor, as these abuses can be fully remedied by resort to other Code sections, such as 11 U.S.C. §§ 523 and 727. The Court noted however that this 100% figure was intended as only the threshold inquiry level and that in some cases a considerably lower figure might suffice. 50 B.R. at 938, n. 6.

In *In re Grant*, 51 B.R. 385 (Bankr.N.D. Ohio 1985), after an extended discussion of the legislative history, the Court held that the issue of substantial abuse would be determined by a number of factors:

Whether the debtors have a likelihood of sufficient future income to fund a chapter 13 plan which would pay a substantial portion of the claims of the unsecured creditors is one factor. Whether the debtors have exhibited any bad faith in the filing of their petitions and schedules, or have engaged in eve of bankruptcy purchases is another factor. Whether the debtors have suffered an unforeseen calamity, or are merely using the chapter 7 provisions to gain relief from past excesses is also a factor. 51 B.R. at 393–394.

### IV.

 This Court concludes that the primary, if not exclusive, factor to be considered in determining whether a debtor's petition constitutes a substantial abuse of the Bankruptcy Code under Section 707(b) is whether the debtor will have sufficient income to repay a meaningful part of his or her debts, within the context of either Chapter 11 or Chapter 13. *In re Bryant, supra; In re White, supra; In re Edwards, supra;* 4 *Collier on Bankruptcy* ¶ 707.02 (15th ed. 1984). Thus, the Court concludes that it should not consider the debtor's pre-petition conduct or circumstances, nor his fraud or bad faith in filing the petition itself. As noted in *Edwards*, there are ample remedies available in the Bankruptcy Code for the pre-petition conduct that Congress has determined to be abusive. *See: In re Hamze*, 57 B.R. 37 (Bankr.E.D.Mich. 1985). The legislative history discussed at length in the cases cited above makes it clear that the primary concern of Congress in 1984 in enacting the new Section 707(b) was its concern that individuals with an ability to pay their debts were improperly filing for bankruptcy, and that there was no mechanism to review this. Therefore, the Court concludes that the filing of a petition under Chapter 7 of the Bankruptcy Code constitutes a substantial

abuse of the Bankruptcy Code when the debtor will have sufficient income to repay a meaningful part of his debts. *See:* Breitwitz, *New Developments in Consumer Bankruptcies: Chapter 7 Dismissal on the Basis of "Substantial Abuse"*, 59 Am. Bankr.L.J. 327 (1985).

The Court further notes that the provisions of Chapter 13 provide substantial guidance on this issue. Specifically, 11 U.S.C. § 1325(b) provides:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; or

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

Thus, the Court concludes that the first issue to be addressed is the amount of the debtor's disposable income. The second issue is then whether use of this disposable income in a plan would result in repayment of a meaningful part of the debts. These judgments are obviously somewhat subjective, but can be guided by the Court's sense of equity and by balancing the effects on the various parties in interest of granting a discharge or alternatively dismissing the petition. *See In re White,*

*supra.* In any case, the presumption in favor of granting the relief requested by the debtor, as stated in Section 707(b), must be abided.

## V.

■ The debtor's disposable income is calculated from his income and his expenses which are reasonably necessary for his maintenance and support and that of his dependents. *See: Collier, supra,* ¶ 1325.01[3][d]. The Court concludes that an expenditure of $480 per month for food, most of which is expended at restaurants, is not reasonably necessary; rather, the Court believes that the most that the Court can conclude is reasonably necessary for this expense is $300 a month.

■ Likewise, the Court cannot find that $608 per month for transportation expenses is reasonably necessary. The evidence reflects that this expenditure is for a luxury automobile, and the Court concludes that this simply cannot be justified, considering the debtor's financial circumstances. Given an expected lease payment on a standard car, plus gas and maintenance expenses, the Court concludes that $300 per month is reasonably necessary for transportation.

In calculating the debtor's disposable income, the Court has concluded that the $50 per month for the condominium special assessment should be deleted because it would expire at the end of 1985.

■ The Court has further concluded that the debtor's payroll deduction of $410 bi-monthly, or $820 monthly, for his annuity can likewise not be justified, considering his financial circumstances. The debtor is apparently saving for his future at the expense of his present creditors; this is simply not reasonably necessary for his support and cannot be condoned.

Finally, the Court notes that for five months of the year, the FICA withholding of $218 bi-monthly is not deducted. This results in an additional $2,180 per year to the debtor, or $182 per month.

Accordingly, the Court concludes that the debtor's disposable income is $1,993 per month, calculated as follows:

| | |
|---|---:|
| Net pay per checkstub | $3,136 |
| Adjustment for Annuity | + 820 |
| Adjustment for FICA | + 182 |
| Total net income available | $4,138 |
| Expenses per schedule | $2,683 |
| Adjustment for: | |
| Food ($480–300) | – 180 |
| Transportation ($608–300) | – 308 |
| Condominium Assessment | – 50 |
| Expenses reasonably necessary | $2,145 |
| Disposable Income ($4,138–2,145) | $1,993 |

Therefore, the Court concludes that the debtor's disposable income is $1,993 per month. Assuming a constant net disposable income for 36 months (see Part V, below), the debtor would be able to pay $71,748 in a three-year Chapter 13 plan. The creditors would be paid that amount, less the trustee's fee of 10%, for a net payment of $64,573.

■ Although the debtor is not eligible to file a Chapter 13 petition because his unsecured debt exceeds $100,000, 11 U.S.C. § 109(e), *In re Pearson,* 773 F.2d 751 (6th Cir.1985), he is nevertheless eligible to file a Chapter 11 petition. 11 U.S.C. § 109(d). And no impediment to the confirmation of a Chapter 11 plan similar to the Chapter 13 plan described above readily appears; in fact, the greater flexibility of a Chapter 11 plan might be advantageous to the debtor. Moreover, because a plan under Chapter 11 would not be limited to three years, the debtor could reasonably be expected to repay even a greater part of his debts.

## VI.

■ The debtor notes that his present employment contract expires in February of 1986 and that he has no expectation that it will be renewed. He further notes that an instructor with his teaching load would normally earn $40,000 per year. Thus, he argues that no debt repayment plan is feasible.

Again, the Court turns to the Bankruptcy Code for guidance. 11 U.S.C.

§ 1325(a)(6) provides that the Court shall confirm a Chapter 13 plan if "the debtor will be able to make all payments under the plan and to comply with the plan." Similarly, 11 U.S.C. § 1129(a)(11) provides for confirmation of a Chapter 11 plan if it "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor...."

In construing 11 U.S.C. § 1325(a)(6), the Court in *In re Severs*, 28 B.R. 61, 65 (Bankr.S.D.Ohio 1982), held:

> Feasibility is another of those tests which Congress left largely to the sound discretion of bankruptcy courts. It is clear that if more is proposed to be spent under a plan than the debtors have available for such purpose, the plan should be found unfeasible. Likewise, if a debtor's medical history, job experience, family health, criminal propensity, or other such variables loom as reasonably insurmountable barriers between plan and reality, the proposal will likely fail the test of feasibility.

In *In re Anderson*, 28 B.R. 628, 630 (Bankr.S.D.Ohio 1982), the Court noted:

> As the bankruptcy court below pointed out, this does not mean that a plan cannot be approved unless the court is absolutely certain that all payments will be made under it. It does mean, however, that a reviewing court should confirm a plan only if it appears under all the circumstances that the plan has a reasonable likelihood of success.

Under 11 U.S.C. § 1129(a)(10), the issue is whether the plan "offers a reasonable prospect of success and is workable." *Collier, supra*, ¶ 1129.02[11] at 1129–33 (footnote omitted.) Specifically, "where the debtor is not engaged in business, the facts relating to his earning power and to his general financial prospects should be considered." *Id.* at 1129–35.

Using these standards as a guide, the Court concludes that the debtor could propose a plan to repay a meaningful part of his debts that would be feasible, even given the uncertainty concerning his present employment. Considering the debtor's experience, education, background, skills, health, aptitude, and personality, the Court concludes that the debtor is and will be highly sought after in his chosen field and that he likely will not be unemployed for very long.

Thus, it is clear that a debt repayment plan would have a reasonable likelihood of success.

## VII.

Although the plan outlined above results in payment of only a portion of the debtor's unsecured debt, it must be concluded that the debtor's filing constitutes a substantial abuse of the Bankruptcy Code. This conclusion rests upon the simple judgment that it is unfair and inequitable for the debtor to request that this Court discharge his debts while he accumulates substantial disposable income over the next several years while living a relatively high life style. *In re Bryant, supra; In re White, supra; In re Edwards, supra.*

The effect of dismissal of the petition on the debtor will not be great if he pursues his alternate Chapter 11 remedy. It will only mean that for a period of time he will be required to spend somewhat less on food and transportation and forego saving for his future, so that he can repay to his creditors a substantial portion of his unsecured debt. On the other hand, the effect of a discharge on his creditors is substantial; over $127,000 in unsecured debt will be discharged and his creditors will have lost an opportunity for substantial repayment of those debts.

Accordingly, the Court concludes that this petition constitutes a substantial abuse of the Bankruptcy Code and must be dismissed pursuant to 11 U.S.C. § 707(b), and the discharge, having been entered improperly through a clerical error, is revoked.

IT IS SO ORDERED.