**In re Wallace Ellsworth KENISTON, Debtor.**

**Bankruptcy No. 85–75.**

United States Bankruptcy Court, D. New Hampshire.

May 14, 1986.

Erland McLetchie, Ossipee, N.H., for debtor.

Frederic Cox, Wolfeboro, N.H., United States Trustee, Boston, Mass., for creditor.

### MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

An adversary proceeding was commenced in this Chapter 7 bankruptcy case

on March 29, 1985 by a Complaint objecting to the dischargeability of certain debts arising from a divorce proceeding. The complaint was filed by Deborah D. Keniston, the former wife of the debtor. The debtor's answer to the complaint was filed on June 11, 1985. A pre trial hearing in this matter was held on October 8, 1985 at which time the court struck the plaintiff's complaint, as being legally insufficient, without prejudice to her filing of a new complaint within twenty days.

The court also on October 8, 1985 *sua sponte* ordered that a "substantial abuse" hearing be set pursuant to 11 U.S.C. § 707(b). That statute provides as follows:

> After notice and a hearing, the court, on its own motion and not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

The plaintiff failed to file an amended objection to the debtor's discharge within the time set by the court. By order dated December 9, 1985, it was ordered that the plaintiff's complaint be dismissed. Thereafter, on January 16, 1986 a hearing was held on the court's *sua sponte* order pursuant to § 707(b), to determine whether the granting of relief to this debtor would be a substantial abuse of Chapter 7. Evidence was taken and the debtor submitted a memorandum in open court at the hearing. Subsequently a memorandum was also submitted by the creditor Deborah Keniston.

The debtor and his ex-wife have been engaged in a bitter dispute which arose during their divorce proceedings and culminated in a contempt hearing before the state divorce court—occurring several weeks before the debtor filed his bankruptcy petition—relating to the failure of the debtor to comply with certain payments required under a prior stipulation entered into in the divorce proceedings. The obligations imposed upon the debtor under the divorce proceeding are property settlement obligations which are dischargeable in bankruptcy as a matter of law—as evidenced by the failure of the creditor to amend her dischargeability complaint. See *Bankruptcy Code*, § 523(a)(5).

The essence of the continuing dispute between the parties, now transformed into a "substantial abuse" question under § 707(b) of the Bankruptcy Code, revolves around the debtor's obligation to make payments upon the second mortgage on the former family home. The creditor contends that this obligation, as amended by a voluntary subsequent stipulation between the parties after entry of the divorce decree, was to continue on beyond the reaching of majority age of the youngest child. This in fact is the effect of the literal language included in the amended stipulation.

The debtor contends that the obligation should in all equity be deemed to have terminated at the majority age of the youngest child, inasmuch as the stipulated amendment was done at the request of his ex-wife, to facilitate her financing the remodeling and expansion of the home, with the debtor giving up his right to one-half of the sale proceeds of the house under the original divorce decree. The debtor argues, and this fact is established by the evidence, that it was never intended by the parties to extend his obligation to make the mortgage payments indefinitely, until the ex-wife might choose to sell the family home, in place of his original obligation under the divorce decree to make the payments only until the majority age of the youngest child.

It should be noted that none of these contentions has anything to do with the dischargeability of the debt in question in bankruptcy. *But for* the provisions of § 707(b) the case would proceed and this debt clearly would be discharged.

The matter arguably becomes a "substantial abuse" case on the ex-wife's further contention, originally voiced at the pre-trial hearing on the dischargeability

matter, that the debtor improperly stated to the divorce court at the contempt hearing that he, the debtor, was able to make the continuing payments, indicating by inference that he would continue to do so, while at the same time being aware of the possibility of a bankruptcy filing.[1] The ex-wife at the § 707(b) hearing argued that this "deception", coupled with the admitted ability to pay the debt, constitutes substantial abuse within the meaning of the bankruptcy laws.[2] The debtor responds that the obligation in question was "patently unfair" and that he should not be denied the exercise of his legal rights to obtain discharge of this dischargeable debt after subjecting himself and his assets to the jurisdiction of the bankruptcy court.

There is very little legislative history explaining the intent and purpose of § 707(b) as added by the 1984 Amendments to the Bankruptcy Code. What little legislative explanation exists is well set forth in Judge White's opinion in *In re Grant,* 51 B.R. 385 (Bkrtcy.N.D.Ohio 1985). The developing law appears to construe "substantial abuse" to mean essentially a determination as to whether the particular debtor has the ability to pay a meaningful part of his debts under the alternative of a plan under Chapter 11 or Chapter 13 of the Code. See, e.g., *In re Bell,* 56 B.R. 637 (Bkrtcy.E.D.Mich.1986) (ability to repay is "primary, if not exclusive, factor"); *In re Mastroeni,* 56 B.R. 456 (Bkrtcy.S.D.N.Y.1985) (dicta); *In re Edwards,* 50 B.R. 933 (Bkrtcy.S.D.N.Y.1985) ("debtor's future ability to pay is the proper focus of Code § 707(b)"); *In re Bryant,* 47 B.R. 21 (Bkrtcy.W.D.N.C.1984). One court has indicated that there also must be involved "some type of unfair ad-

vantage" in addition to the ability to pay. *In re White,* 49 B.R. 869 (W.D.N.C.1985).

If constrained to rule upon the "merits" or "demerits" of this matter, the court would tend to agree with the debtor's factual contentions as indicated above, together with his further factual contention that the only reason he has the "ability to pay" the obligation in question is the fortuitous circumstance that he is now remarried to a fairly wealthy woman. The record of the trial of this matter, involving the literal language of the "document you signed" as opposed to the underlying intent of the parties, has a good bit of the flavor of Shakespeare's "The Merchant of Venice" in that regard. On the other hand, the case raises a difficult question of comity and respect for state courts since the divorce court at the contempt hearing found the debtor *did* understand the meaning and import of the amended stipulation.

This court, however, is not convinced that it *is* constrained to apply § 707(b) to this debtor in *any* fashion requiring dismissal of this Chapter 7 petition. Although neither party raised or briefed the issue, it appears obvious on the face of the statute that an unconstitutional denial of equal protection of the laws may be included therein. No rational basis for distinction between "consumer" debtors and other debtors seeking chapter 7 bankruptcy relief is readily apparent if *abuse* of the bankruptcy laws is the standard to be employed. The statute does not define "consumer debts" but the cases construing the statute so far have in effect defined such debts as being obligations for the purchase of goods or services by individuals for consumption, as opposed to business debts or tort judg-

---

1. The very fact that the ex-wife voiced these contentions at the pre-trial hearing could itself be construed as a violation of the § 707(b) language prohibiting the substanial issue to come forward "at the request or suggestion of any party in interest." Cf. *In re Christian,* 51 B.R. 118 (N.J.1985). However, it is not unusual for creditors to object generally to "abuse" by the debtor in conjunction with various adversary proceedings and that is all that occurred here. Left for another day is the question of *deliberate* efforts to provoke a "sua sponte" § 707(b) order

by the artful use of an unrelated adversary proceeding to that end.

2. Once the court issues a sua sponte § 707(b) order for a hearing on possible abuse, it may well be open to any creditor to appear and be heard on the issue. The statute itself is not clear in that regard but in the present case the debtor did not object to the creditor's appearance and participation.

ment debts. See *In re White,* supra; *In re Bryant,* supra.

The result is that a debtor having a personal injury judgment, or a debtor having debts primarily related to business activity, is entitled to Chapter 7 relief and discharge of his debts, with no questions asked as to his ability to repay, while the "consumer" debtor is required to establish that he cannot pay off his debts under some extended payment plan before he can obtain the same relief.

If, as the Supreme Court has said, a "fresh start" for the bankrupt is the underlying rationale for the bankruptcy laws, § 707(b) of the present Bankruptcy Code arguably presents a case of denial of equal protection in so conditioning bankruptcy relief for one class of debtors. The "fresh start" rationale is set forth in *Local Loan v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). See also *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

It should be especially noted in this regard that Congress in the enactment of the 1978 Bankruptcy Code removed the requirement of insolvency as a pre-condition for filing a petition under any chapter of the Bankruptcy Code. Solvent debtors now can file bankruptcy petitions if they are willing to subject their assets to administration under the bankruptcy laws. As indicated above, except for the provisions of § 707(b), the debtor in the present case, whether solvent or not, clearly would be entitled to have his debts discharged in this bankruptcy proceeding.

Other constitutional questions arising under this statute include the following:

(1) Does the statute deny procedural due process by constituting the judicial officer who must decide the ultimate question of the debtor's right to bankruptcy relief as in effect "accuser" or "prosecutor" initiating the complaint against the debtor?

(2) Is the requisite "case and controversy" requirement for federal jurisdiction under Article III of the Constitution present when no other party *besides the court itself* has raised any issue or dispute requiring judicial determination?

(3) If this statute is construed to require the judicial officer to review all bankruptcy petitions, to determine whether some involve "substantial abuse" requiring objection and possible denial of bankruptcy relief, does the placing of that review and processing function with a judicial officer violate the separation of powers doctrine inherent in the Constitution?

(4) Is there a violation of substantive due process by the arguably vague language of this statute giving no standard for its application and apparently indicating "abuse" of the bankruptcy laws is permissible but "substantial abuse" is not?

Inasmuch as neither party raised or briefed these constitutional questions, and considering the general principle that a federal court will try to avoid declaring a statute unconstitutional whenever possible, the court will not proceed any further in this matter on the present record in this case without further hearing and briefing. Federal law also requires that when the validity of a federal statute is called into question the U.S. Attorney General must be advised and the Clerk of this court is hereby directed to give such statutory notice.

Finally, in view of the relatively small amount of money involved in the debts the debtor is seeking to discharge by this proceeding, and further considering the rather unusual *sua sponte* activity of the court required by the Constitution as well as the statute in the circumstances, the court will consider any request by either party, within thirty days of date, that special counsel be appointed to file *amicus* briefs presenting arguments for or against the validity of the statute in question. The court will then determine an appropriate briefing schedule and set a hearing for further argument on the questions presented by this case.