**In re John D. NEWSOM and Christine V. Newsom, Debtors.**

**Bankruptcy No. 86–05895.**

United States Bankruptcy Court, D. North Dakota.

Jan. 14, 1987.

Kevin Spaeth, Grand Forks, N.D., for debtors.

Richard L. Nelson, Grand Forks, N.D., trustee.

U.S. Trustee William Westphal, Minneapolis, Minn.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the court on its own Order to Show Cause issued *sua sponte* on December 19, 1986, directing the Debtors to appear and show cause why their Chapter 7 petition should not be dismissed pursuant to the substantial abuse provision of section 707(b) of the Bankruptcy Code.

A hearing was held on December 29, 1986, at which the Debtors as well as counsel appeared.

The Debtors' case was commenced by petition filed October 16, 1986, and came to the court's attention after an examination of the schedules indicating that from a combined monthly net income of $2,508.00, the Debtors had monthly expenditures totalling $2,232.00 including certain expenses which appear excessive as will later be discussed. From their Schedule of Income and Expenses there appears to exist a budget surplus of at least $276.00 per month which could be used to fund a Chapter 13 plan. At the hearing no additional evidence was offered.

1.

Both Debtors are non-commissioned officers with the United States Air Force situated in Grand Forks, North Dakota. John is a command post specialist earning $1,408 net each month and Christine is a ECM technician also earning $1,408 each month. They have no other dependents besides themselves.

They have three secured debts totalling $21,956.00, $21,820.00 of which stems from the purchase of a 1986 Ford Bronco and a 1985 Pontiac Trans Am. The Ford and a secured television are being surrendered which would leave as the only secured debt $10,000.00 as a consequence of the Pontiac purchase.

Their unsecured debts total $20,911.00 consisting exclusively of consumer debt. As far as can be determined, it appears that at least $6,611.00 of the total was incurred as a result of bank card use, $12,764.00 from retail credit, and $1,350.00 from credit union loans. Of the total, $11,563.00 was incurred exclusively in the year 1986.

Their monthly expenses total $2,232.00 including $100.00 per month for recreation and $150.00 per month for cigarettes and miscellaneous items. Although the Debtors themselves did not so testify, their counsel at the hearing suggested the $150.00 was monthly "walk around money". The court interprets this comment as meaning a recreational or discretionary use. Accordingly, it would appear that the Debtors have budgeted approximately $250.00 per month for the pursuit of discretionary recreational activities.

Without considering whether $250.00 per month for recreational use is excessive, the Debtors are still left with a budget surplus of $276.00 per month. If $250.00 per

month is regarded as an excessive expenditure, their budget surplus is even greater.

2.

■ Section 707(b) of the Bankruptcy Code, providing for the dismissal of Chapter 7 cases provides as follows:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b).

The foregoing section was enacted as a part of the consumer credit amendments of the Bankruptcy Amendments and Judgeship Act of 1984 as a means of combating what Congress viewed as an abuse of Chapter 7 by consumer debtors who had the ability to pay. Neither the statute as drafted nor its framers meant it as a method of forcing consumer debtors into Chapter 13; rather, it affords the bankruptcy court the ability to dismiss a Chapter 7 case where, in consumer cases, substantial abuse exists. *In re White*, 49 B.R. 869 (Bankr.W.D.N.C.1985).

■ The operative language of section 707(b) is "primarily consumer debts" and "substantial abuse". The term "consumer debt" is defined in section 101(7) as a debt incurred by an individual primarily for a personal, family, or household purpose. Section 707(b), being aimed at abuses in the consumer debtor arena, lends itself to incorporation of the section 101(7) definition of consumer debt, and the court believes the section 101(7) definition ought to be applied in section 707(b) reviews. The term "substantial abuse" is more troublesome. It is not defined elsewhere in the Bankruptcy Code and the language of the section itself is devoid of definitive language.

■ From the developing case law, this court has adopted the following as criteria against which the facts of a particular case ought to be judged in determining whether substantial abuse exists sufficient to mandate dismissal under section 707(b):

1. Whether the debtors have a likelihood of sufficient future income to fund a Chapter 13 plan which would pay a substantial portion of the unsecured claims;

2. Whether the debtors' petition was filed as a consequence of illness, disability, unemployment or some other calamity;

3. Whether the schedules suggest the debtors incurred cash advances and consumer purchases in an excess of their ability to repay them;

4. Whether the debtors' proposed family budget is excessive or extravagant;

5. Whether the debtors' statement of income and expenses is misrepresentative of their true financial condition.

*In re Kress*, 57 B.R. 874 (Bankr.N.D.1985); *In re Grant*, 51 B.R. 385 (Bankr.N.D.Ohio 1985); *In re White, supra; In re Bryant*, 47 B.R. 21 (Bankr.W.D.N.C.1984). The most important criteria is the debtors' ability to make repayment.

It is in view of the foregoing criteria, with particular emphasis on the ability to repay, that the facts of the instant case are considered. The court concludes first of all that the Debtors' unsecured obligations are comprised exclusively of consumer debt as that term has been previous defined. Before considering the Debtors ability to repay, several other of the substantial abuse criteria will be discussed. The Debtors' schedule of unsecured debt is highly suggestive of individuals who, already aware of their financial limitations and already faced with financial difficulties, went ahead and rang up at least $11,500.00 of consumer debt in 1986—an amount equal to thirty percent of their combined annual net income and which was incurred at a time

when they already had unsecured obligations of over $9,000.00. Even worse, they apparently purchased a second vehicle during this time period. Such action can only be regarded by the court as a completely irresponsible use of credit for non-essential items.

■ The Debtors' proposed family budget seems extravagant insofar as they profess to need $250.00 per month for entertainment and recreation including $150.00 per month for cigarettes or, as their attorney characterized it "walk around money". The court finds this aspect of the budget as unacceptable. It appears that the Debtors are making no effort to tighten their belts or maintain a conservative life style. With a combined annual net income of nearly $34,000.00 and no dependents, the Debtors are far better off than many and ought to be able to live quite comfortably while at the same time making an effort to pay back at least a portion of their unsecured creditors.

■ Debtors' counsel valiantly argued that military personnel saddled with debt are faced with either bankruptcy or some form of military enforced penalties should they not own up to their financial obligations suggesting that Chapter 7 is the only viable alternative for them. While it is unfortunate that debtors in uniform suffer an additional onus of military chastisement, this by no means lessens their responsibility nor this court's obligation to review their Chapter 7 petition as it would that of any other debtor. The fact of military service does not entitle the Debtors to any less consideration than their civilian counterparts but it does not entitle them to any more either. In sum, Chapter 7 should not be counted on by military personnel as a means of escaping debt where it would not be an appropriate vehicle were they civilians. Persons in the military cannot go on a consumer spending spree and later file for Chapter 7 relief expecting a bankruptcy court to treat them any differently as a consequence of military service than it would anyone else.

■ The ability to pay back a substantial portion of unsecured debt does not require an ability to pay back one hundred percent. All that is required is that the payback be significant and that there be a likelihood of sufficient future income to maintain such a payback. In the present case, assuming future income and expenses remain stable, the Debtors would at a minimum, be able to contribute $276.00 per month or $3,312.00 per year towards a repayment plan. Over a three-year period, they would have contributed $9,936.00 resulting in a repayment of forty-seven percent of their unsecured claims. Contributions over a five-year period would result in an eighty-percent payback. None of these figures can be regarded as insignificant as far as creditors are concerned and strongly suggest that a meaningful payback could be accomplished. An even greater payback could be accomplished by honing the Debtors' entertainment budget to a more realistic level. At any rate, this court believes the Debtors have the financial means at hand and will continue to have the means to fund a Chapter 13 plan which would retire a substantial portion of the unsecured claims.

Viewing the Debtors' circumstances as a whole, the court concludes that granting them Chapter 7 relief would constitute a substantial abuse of the Chapter and would be contrary to the intent of Congress.

Accordingly, IT IS ORDERED that the Chapter 7 petition of John D. and Christine V. Newsom filed October 16, 1986, be and is hereby DISMISSED pursuant to section 707(b) of the Bankruptcy Code.