In re Sharon WILSON, Debtor.

Sharon WILSON, Defendant–Appellant,

v.

The UNITED STATES TRUSTEE, Plaintiff–Appellee.

Bankruptcy Nos. SL89–01365, 1:89:CV–1110.

United States District Court, W.D. Michigan, S.D.

Oct. 11, 1990.

Marshall A. Yee, Debt Relief Legal Clinic of Michigan, PC, Lansing, Mich., for appellant.

Ellen G. Ritteman, Office of the U.S. Trustee, Grand Rapids, Mich., for appellee.

## OPINION

HILLMAN, Chief Judge.

### BACKGROUND

Sharon Wilson ("debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on April 12, 1989. The United States Trustee ("Trustee") moved to dismiss debtor's petition pursuant to 11 U.S.C. § 707(a) and (b). On September 27, 1989, the Honorable Jo Ann C. Stevenson, United States Bankruptcy Judge, held a hearing on Trustee's motion to dismiss. At the conclusion of that hearing, the bankruptcy court held that allowing debtor Chapter 7 relief would be a substantial abuse of that chapter. 11 U.S.C. § 707(b). Judge Stevenson found two reasons substantial abuse would occur: 1) debtor had been dishonest and 2) debtor was able to repay a portion of her debt. The bankruptcy court delayed entry of the order of dismissal to allow debtor time to refile her petition under Chapter 13 but debtor chose not to refile. A dismissal was entered and this appeal followed.

### FACTS

The evidence before the bankruptcy court consisted of Debtor's Schedules and Statements of Affairs, two Amendments to the Chapter 7 A–3 Schedules, and the testimony and exhibits submitted by debtor and Trustee at the September 27, 1989 hearing.

According to the bankruptcy court's findings of fact, debtor was single and lived alone. She had a total unsecured credit card debt of $79,236.23. In addition, debtor owed $14,326 on a purchase money security interest loan for a 1986 Cadillac, $1,248 on a purchase money security interest for a 1982 Cadillac, and $1,100 on the lease of a 1985 Pontiac Fiero. Debtor apparently did not reaffirm her debt in the Fiero.

The bankruptcy court found that during the ninety days prior to filing her Chapter 7 petition, debtor charged $2,854 worth of purchases on several credit cards. On March 29, 1989, debtor made two purchases from two different Zales Jewelry Stores. She purchased $450 worth of jewelry at one Zales and $350 at another. On April 1, 1989, debtor returned to Zales and charged another $159 worth of jewelry. On April 12, 1989, debtor filed a Chapter 7 petition.

In records submitted to the bankruptcy court, debtor valued her personal property at $22,600.86, including $16,500 for the two Cadillacs. Personal property and household goods were valued at $993, although the bankruptcy court found that $19,300 of her credit card debt was for furniture purchases. Debtor testified that the discrepancy was due to depreciation and the fact that some of the furniture was purchased many years ago. Women's clothing was valued at $2,000 although $29,907.38 of her credit card debt was for charges made at

clothing stores selling only women's clothing.

The bankruptcy court found that debtor was currently employed as a school teacher, netting $1,836 monthly. Debtor testified that in 1987 she grossed $66,000, of which $32,000 was earned from a long-standing, part-time job with Oldsmobile. However, in schedules submitted to the bankruptcy court, debtor listed gross income for 1987 of only $36,000. Oldsmobile laid off debtor in May 1988. However, debtor estimated her gross pay in 1988 at $35,000, thus presumably failing to list approximately $10,664 of net pay earned from Oldsmobile in the first four months of 1988.

On debtor's Schedule of Income and Expenses, she listed her monthly expenses as follows:

| | |
|---|---|
| Rent | $350 |
| Utilities | $150 |
| Food and Sundries | $300 |
| School and Work Lunches | $40 |
| Beverages | $8 |
| Automobile Insurance | $110 |
| Gas and Oil | $100 |
| Repairs and Tires | $50 |
| Hair Stylist | $40 |
| Medical and Drugs | $60 |
| Clothing | $50 |
| Cleaning and Laundry | $40 |
| Recreation | $30 |
| Miscellaneous | $10 |
| 1982 Cadillac | $90 |
| 1986 Cadillac | $405 |
| | $1,833 |
| Net Monthly Income | $1,836 |

The bankruptcy court determined its own reasonable monthly figures for debtor:

| | Bankruptcy Court | Debtor's Estimate |
|---|---|---|
| Food | $200 | $ 348 |
| Transportation | $356 | $ 760 |
| Hair Stylist | $ 20 | $ 40 |
| Clothing | $ 10 | $ 50 |
| | $586 | $1198 |

The bankruptcy court calculated these savings would yield a monthly income over expenses of $765. Over a period of three years, $765 a month totals $27,540. On an unsecured debt of $81,652, these savings would result in a 32 percent repayment of the debt.

The bankruptcy court held that because debtor could repay 32 percent of her unsecured debt and because she had been less than honest in her dealings with the bankruptcy court, debtor's Chapter 7 petition would be dismissed.

## STANDARD OF REVIEW

The bankruptcy court is the finder of fact and that court's factual determinations will only be set aside if they are "clearly erroneous." Bankruptcy Rule 8013; *In re Caldwell*, 851 F.2d 852, 857 (6th Cir.1988), *later appeal*, 895 F.2d 1123 (6th Cir.1990). Factual rulings are not to be disturbed unless there is the "most cogent evidence of mistake or miscarriage of justice." *In re: Edward M. Johnson and Associates, Inc.*, 845 F.2d 1395, 1401 (6th Cir.1988). The bankruptcy court's legal conclusions, however, are subject to *de novo* review. *In re Caldwell*, 851 F.2d at 857.

## DISCUSSION

11 U.S.C. § 707(b) provides:

After notice and hearing, the court, on its own motion or on a motion by the

United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

The parties stipulated that the debts at issue are consumer debts. The one issue to be decided, while keeping in mind the presumption in favor of debtor, is whether allowing debtor the protection of Chapter 7 would be "substantial abuse" of the chapter.

The term "substantial abuse" is not defined in the Bankruptcy Code. The Sixth Circuit recently interpreted the term in *In re Krohn*, 886 F.2d 123 (6th Cir.1988). The *Krohn* court promulgated a "totality of the circumstances" test to determine whether debtor is "merely seeking an advantage over his creditors, or instead is 'honest,' in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether [debtor] is 'needy' in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets." *Id.* at 126 (citation omitted). Thus, "[s]ubstantial abuse can be predicated upon either lack of honesty or want of need." *Id.*

DEBTOR'S LACK OF HONESTY

■ The *Krohn* court specified three factors to consider when evaluating a debtor's honesty:

— debtor's good faith and candor in filing schedules and other documents;
— whether debtor engaged in "eve of bankruptcy purchases"; and
— whether debtor was forced into Chapter 7 by unforeseen or catastrophic events.

*Krohn*, 886 F.2d at 126.

The bankruptcy court, after witnessing debtor's testimony at a hearing and reviewing the record, found that debtor had been less than forthright with both her creditors and the court. As to the first *Krohn* honesty factor, debtor failed to list on her Statement of Financial Affairs approximately $30,000 of income earned from Oldsmobile in 1987. In addition, debtor failed to account for approximately $10,000 in Oldsmobile income in her reported 1988 income.

The bankruptcy court found evidence of "eve of bankruptcy spending"—literally. On March 29, 1989, debtor charged approximately $800 worth of jewelry and on April 1, 1989, she charged another $159 worth of jewelry. On April 1 or 2, 1989, debtor visited her attorney to discuss filing for bankruptcy. Thus, within three days of deciding to file for bankruptcy, debtor rang up almost $1000 worth of jewelry. This is a textbook example of "eve of bankruptcy" spending.

The bankruptcy court found further evidence of "eve of bankruptcy purchases." Debtor charged $2,854 in the ninety days prior to filing for Chapter 7 relief. The record reveals that these charges were not for medicine or other necessities of life, but for clothing, jewelry, gifts, airline tickets, and cash advances.

The third *Krohn* factor is whether some unforeseen or catastrophic event catapulted debtor into bankruptcy. As the bankruptcy court found, while debtor's dismissal from Oldsmobile in May 1988 may have been unforeseen, it was not catastrophic. Debtor still had a job as a teacher. Moreover, debtor's credit card charging continued unabated for nearly a year after she lost one of her jobs. And debtor's testimony reveals that she fostered no hope of returning to her Oldsmobile job until at least 1991.

The *Krohn* honesty factors were not meant to be exhaustive. *Krohn*, 886 F.2d at 126. This court has gleaned from the record that debtor made the minimum payments necessary on her credit cards to keep her creditors unaware of her mounting debt. They were also unaware that she was making the payments not out of her income, but by charging cash advances from one credit card to make payments on another card. *See Krohn*, 886 F.2d at 125. Indeed, debtor testified that she was "robbing Peter to pay Paul." Yet, she was also

robbing Paul to pay Peter. It is clear from the record that debtor's charging mania slowly surpassed her means and even when she lost half of her income, she continued charging until her house of credit cards came tumbling down.

This court cannot say that debtor's "relationship with [her] creditors has been marked by essentially honorable and undeceptive dealings." *Krohn*, 886 F.2d at 126. Given the totality of the circumstances, the bankruptcy court was correct when it found that debtor had lacked honesty.

## DEBTOR'S WANT OF NEED

■ Substantial abuse can also be predicated on whether a debtor actually is in need of Chapter 7 protection. "Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings." *Krohn*, 886 F.2d at 126. (citations omitted). Where a debtor's disposable income permits liquidation of consumer debts with "relative ease," dismissal is warranted. *Id.* In the present case, debtor reported that she had only $18 monthly of disposable income after comparing her income and expenses.

Among other factors relative to the debtor's neediness is "whether [debtor's] expenses can be reduced significantly without depriving [her] of adequate food, clothing, shelter and other necessities." *Id.* at 127. The bankruptcy court reduced debtor's monthly expenses to leave her with a disposable income of $765. Over a three-year period, such a reduction would allow debtor to repay 32 percent of her unsecured debt. Upon a *de novo* review of the law, this court finds that the bankruptcy court correctly reduced debtor's monthly expenses and correctly forecasted debtor's repayment of a portion of her debt.

■ Debtor budgeted a total of $348 a month for food. Debtor is an asthmatic and testified that she must eat "a lot of green, leafy vegetables and the red meat." But debtor did not explain why an asthmatic's diet is more unusual or more expensive than a non-asthmatic's diet. The Chapter 13 trustee testified that the average food expense for one person was $195.75 per month. Upon review of the record, the bankruptcy court's reduction of monthly food expenses to $200 was simply "good, old-fashioned belt tightening." *Krohn*, 886 F.2d at 128.

■ Debtor budgeted $760 per month for transportation even though debtor only travels six miles a day to and from work. The $760 includes the payments and upkeep on 1982 and 1986 Cadillacs and visits to relatives in Indiana and Texas. The bankruptcy court concluded that debtor should not be permitted to drive the newer luxury car all over the country at the expense of her creditors and accordingly reduced her monthly expenses by $539. This court agrees. *See In re Bell*, 56 B.R. 637, 642 (Bankr.E.D.Mich.1986), *vacated*, 65 B.R. 575 (Bankr.E.D.Mich.1986) ($608 per month for a luxury car cannot be justified).

■ The bankruptcy court also made minor adjustments in debtor's hair and clothing expenses. This court concludes these reductions were reasonable. *See In re Piontek*, 113 B.R. 17, 20–21 (Bankr.D.Or. 1990) (bankruptcy court made minor adjustments in debtors' monthly budget schedules). It is clear to this court that debtor would not be deprived of adequate food, clothing, shelter or other necessities under the bankruptcy court's reduced monthly expense budget.

■ If debtor cut these excesses out of her monthly budget, $765 a month would be freed up to help repay some of her debt. Over a period of three years, debtor could repay 32 percent of her unsecured debt. Over five years, the bankruptcy court estimated, debtor could repay 53 percent of her unsecured debt.

Debtor argues that these percentages are simply too low to allow dismissal of debtor's Chapter 7 petition. This court disagrees. First, under Sixth Circuit law, a court's finding of substantial abuse can be "predicated upon *either* lack of honesty *or* want of need." *Krohn*, 886 F.2d at 126 (emphasis added). The bankruptcy court forcefully showed that debtor lacked honesty in this case. Second, the figures of 32 percent for three years and 52 percent for

five years are not out of the mainstream. *See In re Roth,* 108 B.R. 78, 80 (Bankr.W. D.Pa.1989) (debtors' Chapter 7 petition was dismissed because they could repay 43 percent over three years). After a review of the law, this court finds that the bankruptcy court's dismissal of debtor's Chapter 7 petition for want of need was correct.

■ In summary, the bankruptcy court's findings that debtor lacked honesty by misreporting her income and engaging in "eve of bankruptcy purchases" was amply supported by the record. The bankruptcy court's finding that debtor was not in need of Chapter 7 relief because she could repay a portion of her unsecured debt was also supported by the record.

### ORDER

In accordance with the opinion filed this date,

IT IS HEREBY ORDERED that the United States Bankruptcy Court's order of dismissal of debtor Sharon Wilson petition for Chapter 7 relief is AFFIRMED.