**In re George McCORMACK, Marlene McCormack, Debtors.**

**Bankruptcy No. 93–30885.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Oct. 8, 1993.

Robert Retske, Toledo, OH, for debtors.

Louis Yoppolo, Trustee, Toledo, OH.

## OPINION AND ORDER GRANTING MOTION TO DISMISS

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court on the United States Trustee's ("UST's") motion to dismiss George and Marlene McCormack's (the "Debtors'") bankruptcy petition under 11 U.S.C. § 707(b) as a substantial abuse of chapter 7. Upon consideration of the evidence adduced at trial and the oral arguments of the parties, the Court finds that the UST's motion is well taken and should be granted. The Court will grant the Debtors 10 days from the date of this order in which to dismiss their chapter 7 case or convert to a case under chapter 13.

### FACTS

The Debtors filed a petition under chapter 7 of title 11 on March 24, 1993 ("the Petition").

Mr. McCormack is 60 years old and earns approximately $41,000.00 per year from his employment at Jacobson's. He has held this job for 18 years. Mr. McCormack testified that he and his wife own their house, which has a fair market value of $20,000.00, free of any liens. Mr. McCormack testified that he will retire in the Spring of 1995 when he reaches age 62. Despite these purported plans, Mr. McCormack has not inquired of Jacobson's or of the Social Security Administration with regard to his available retirement benefits.

Mr. McCormack further testified that he had open heart surgery five years ago and that he has had recurring problems with arthritis in his ankles and knees. Despite these apparent health problems, Mr. McCormack testified on cross-examination that he has not missed a day of work in the past two years.

Mrs. McCormack is 58 years old and earns approximately $20,000.00 per year as an admitting clerk for a local hospital. She has held this job for 23 years.

Although she has had a fractured disk which required surgery in the past, Mrs.

McCormack testified that she does not have any health problems which currently prevent her from working.

The parties stipulated to the admissibility of Debtors' bankruptcy schedules at trial.

Total unsecured debts listed by Debtors on their amended schedules totaled $101,220.00. *See* Schedule F. Mr. McCormack's testimony and the Debtors' Schedule F indicate that the Debtors seek to discharge debts incurred in purchases of consumer products, food, clothing and gifts. In addition, Mr. McCormack testified that the Debtors occasionally obtained cash advances on certain credit cards to pay the balances on their other credit cards. Mr. McCormack also testified that the Debtors have made extensive expenditures for home maintenance. However, the Debtors did not describe these expenditures with any degree of specificity at trial or in their bankruptcy schedules.

The Debtors introduced a credit report from March, 1991 in support of their contention that the debts listed on Schedule F had not been incurred recently (the "Credit Report"). *See* Defendants' Exhibit 1.

In rebuttal, the UST provided evidence that the Debtors' alleged abuse of consumer credit had continued unabated up to, and subsequent to, the date of the Petition.

In 1992 the Debtors traded in their 1988 Plymouth Sundance to lease a 1993 van with total payments due under the lease of $20,500.00. This van was surrendered to a creditor under the lease after the filing of the Petition.

On cross examination, Mr. McCormack further acknowledged that the McCormacks' debt owed to Dayton Hudson had increased from $31.00 on the Credit Report to $2,000.00 on the Petition Date. The McCormacks' debt owed to J.C. Penney increased from $787.00 on the Credit Report to $1,700.00 on the Petition date. Further, Mr. McCormack stated that he made credit card charges in January and February of 1993. Mr. McCormack testified that the Debtors have vacationed in Florida once a year for the last five years with an average cost of $500.00–$600.00 per year. The Debtors have financed these vacations with credit cards.

Since filing the Petition, Mr. McCormack has entered into an agreement to lease a 1993 van with a lease payment of approximately $400.00 per month. Mr. McCormack testified that this van was "necessary" to drive himself and coworkers to meetings at Jacobson's home office. Mr. McCormack's testimony did not indicate that providing a van was a condition of his employment. Further, Mr. McCormack's testimony did not indicate that these trips were frequent enough to warrant the purchase of a van.

Mr. McCormack admitted that, at the time the Debtors filed the Petition, he owed a credit card debt to Jacobson's which he knowingly omitted from Debtors' Schedule J. Mr. McCormack also testified that the current balance of the credit card was $2,800.00 and that he had "recently" used this credit card.

The Debtors' testimony and the Debtors' schedules also provided information as to the Debtors' monthly income and expenses.

The Debtors have listed total net monthly take home pay of $3,526.00. *See* Schedule I.

Debtors have scheduled $5,186.31 in total monthly expenses. *See* Schedule J. The Debtors have included $2,746.98 of "credit card and debt expenses" for dischargeable debts on their schedule J, despite the fact that this inaccuracy was brought to the Debtors' attention in the UST's brief before the pretrial conference on this proceeding. *See* U.S. Trustee's Motion to Dismiss Under 11 U.S.C. § 707(b) at p. 2., filed July 1, 1993. On cross-examination, Mr. McCormack also testified that an amount listed of $166.25 per month for medical expenses represents an improper duplication of an expense item listed elsewhere on his bankruptcy schedules.

Among the other expenses scheduled by the Debtors are $326.00 per month for clothing for Debtors, $132.00 per month for charitable contributions, $152.00 per month for home maintenance expense and $113.00

per month for "recreation, clubs, newspapers and magazine expense".

## DISCUSSION

11 U.S.C. § 707(b) provides that:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

Debtors' debts are primarily "consumer debts" as defined by 11 U.S.C. § 101(8) because they were "incurred by [the Debtors] primarily for personal, family, [and] household purpose[s]". The Debtors do not argue to the contrary.

The Sixth Circuit noted in *In re Krohn* that "[s]ubstantial abuse can be predicated upon either lack of honesty or want of need." *Krohn*, 886 F.2d 123, 126 (Sixth Cir.1989).

### Lack of Honesty

■ The nonexhaustive list of factors which a court should consider in determining whether a debtor is honest include:

[1.] the debtor's good faith and candor in filing schedules and other documents.

[2.] whether [the debtor] has engaged in 'eve of bankruptcy purchases,'

[3.] and, whether [the debtor] was forced into Chapter 7 by unforseen or catastrophic events.

*Krohn*, 886 F.2d at 126.

The Court is convinced that the Debtors have not shown "good faith and candor" in completing their bankruptcy schedules. First, the Debtors have continually listed a budget which includes $2,746.98 in credit card debts as an expense despite the fact that the UST informed the Debtors prior to the pretrial conference that this was improper. Second, the Debtors have duplicated certain medical expenses on their bankruptcy schedules, further frustrating attempts to determine their true financial condition. Lastly, and most importantly, Mr. McCormack purposely omitted a debt owed to his employer from the Debtors' bankruptcy schedules.

Additionally, the Debtors leased a 1993 van in 1992 and made certain credit card purchases shortly before filing the Petition. Mr. McCormack testified that he continues to use his Jacobsen's credit card and has done so "recently". Further, since filing the Petition, the Debtors' have entered into a four year lease for a 1993 van with a monthly lease payment of approximately $400 per month. In this case, as in *Krohn*, there appears to be:

> a consistent pattern of living on credit beyond the [Debtors'] means. At no point in the [Debtors'] history, either before or after filing for chapter 7 relief, ha[ve] the [Debtors'] shown a sincere resolve to repay [their] obligations and/or to reduce [their] monthly expenses. [Mr. McCormack] admits to making only minimum monthly payments so as to keep [Debtors'] account[s] current.

*Krohn*, 886 F.2d at 127 (quoting Judge White's opinion published at 78 B.R. 829). Such " 'free-wheeling spending is likely to put the [Debtors] in need of additional relief after several years' ". *In re Krohn*, 78 B.R. 829, 833 (Bankr.N.D.Ohio 1987) (quoting *In re Grant*, 51 B.R. 385 (Bankr. N.D.Ohio 1985)).

The Sixth Circuit noted in *Krohn* that "[i]t is not possible, of course, to list all the factors that may be relevant to ascertaining a debtor's honesty". *Krohn*, 886 F.2d at 126.

An additional factor indicating that the Debtors have been less than honest with their creditors is the Debtors' practice of making minimum payments on certain credit cards by taking cash advances on their other credit cards. *See Wilson v. United States Trustee (In re Wilson)*, 125 B.R. 742, 745 (Bankr.W.D.Mich.1990) (holding that a debtor's obtaining cash advances

on credit cards to pay other credit cards indicated dishonesty where she "was 'robbing Peter to pay Paul'" and "continued charging until her house of credit cards came tumbling down").

Lastly, no unforseen or catastrophic circumstances have brought about Debtors' current financial situation.

**Want of Need**

■ The nonexhaustive list of factors which a court should consider in determining whether a debtor is needy include:

[1.] whether the debtor is able to repay [the debtor's] debts out of future earnings

[2.] whether the debtor enjoys a stable source of future income

[3.] whether the debtor is eligible for adjustment of the [debtor's] debts through Chapter 13 of the Bankruptcy Code

[4.] whether there are state remedies with the potential to ease [the debtor's] financial predicament

[5.] the degree of relief obtainable through private negotiations

[6.] and whether [the debtor's] expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Krohn*, 886 F.2d at 126–27 (citation omitted).

The facts adduced at trial also indicate that the Debtors are not needy.

Both Debtors have substantial earnings which could be devoted to payment of creditors. The Debtors' net monthly take home pay is $3,526.00. The Debtors' total monthly expenses are $2,273.08 exclusive of improperly scheduled amounts for "credit card and debt expenses" and medical expenses. Therefore, the Debtors have $1,252.92 per month which could be devoted to repayment of debt.

The Debtors have a stable source of income. Both Debtors have held their present jobs for at least 18 years. The Court refuses to speculate on Mr. McCormack's planned retirement in March of 1995.

Aside from Mr. McCormack's testimony, the Debtors have not provided any evidence that Mr. McCormack's retirement plans are anything more than conjecture. Further, the Court refuses to speculate as to the Debtors future health. Neither Debtor has health problems which currently prevent them from working. Other than the Debtors' testimony, the Debtors have not provided any evidence that their physical health will impact their future ability to repay their creditors.

For debtors filing under chapter 13, the Court notes that 11 U.S.C. § 1329 specifically provides for the modification of a debtor's chapter 13 plan by the bankruptcy court where a debtor has suffered a change in circumstances.

The Debtors' schedule F lists a debt of $20,500 for a 1993 van which the Debtors leased in 1992. As noted above, this van has since been surrendered to the creditor. Thus, the Debtors' liability on this lease appears to be less than the amount scheduled by the Debtors of $20,500. Therefore it appears that the Debtors, who have scheduled $101,220.00 in unsecured debts would likely be eligible for chapter 13 protection. Even if the Debtors were not eligible for chapter 13 relief, "[Congress'] failure to specifically provide for linkage between Chapters 7 and 13 is evidence that Congress believed there are some circumstances where it would not be equitable to grant a particular debtor a fresh start". *Krohn*, 886 F.2d at 126.

Mr. McCormack testified that he consulted Consumer Credit Counseling Services of Northwest Ohio ("CCC") in 1991 in an attempt to manage the Debtors' bills. Mr. McCormack testified that counselors at CCC told him that his debts were too large to be adjusted through negotiations with creditors. However, Mr. McCormack has not provided evidence that the Debtors attempted to negotiate with their creditors during the last two years. The Court gives little weight to Mr. McCormack's undocumented assertions that he sought a home equity loan from three local banks but was denied. Therefore the Court cannot conclude that relief in the form of state reme-

**496**

dies or private negotiations with creditors is unavailable to the Debtors.

Significant reductions in the Debtors expenses also appear achievable through elimination of expense items such as charitable contributions of $132.00 per month and "[r]ecreation, clubs and entertainment, newspapers, magazines, etc." of $113.00 per month. *See In re Hudson,* 64 B.R. 73, 75 n. 1 (Bankr.N.D.Ohio 1986) (noting that a court should consider charitable contributions under § 707(b) in light of the fact that such contributions are not included within the provisions of 11 U.S.C. § 1325(b)(1) and (2)). A reduction in these expenses would give the Debtors substantial additional funds to pay creditors without depriving them of food, clothing, shelter and other necessities.

### *CONCLUSION*

The Court concludes that the UST has overcome the "presumption in favor of granting the relief requested". The Court further concludes that the Debtors are neither honest nor needy within the meaning of 11 U.S.C. § 707(b). Therefore, dismissal of Debtors' petition under 11 U.S.C. § 707(b) as a substantial abuse of chapter 7 is warranted.

In light of the foregoing, it is therefore

ORDERED that the United States Trustee's motion be, and hereby is, granted. It is further

ORDERED that George and Marlene McCormack be granted 10 days from the date of this order in which to dismiss their chapter 7 case or convert it to a case under chapter 13; otherwise, their case will be dismissed without further notice or hearing.