**In re Margaret BRAITHWAITE, Debtor.**

**Bankruptcy No. 95–31653.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Feb. 15, 1996.

Derrick Rippy, Office of the U.S. Trustee, Cleveland, Ohio, for Movant.

Frederic Boyk, Toledo, Ohio, for Debtor.

**OPINION AND ORDER GRANTING UST'S MOTION TO DISMISS**

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the Court on the United States Trustee's ("UST") motion to

dismiss the chapter 7 case of Debtor Margaret Braithwaite (the "Debtor") pursuant to 11 U.S.C. § 707(b). Having concluded that the Debtor's chapter 7 case constitutes a "substantial abuse" of chapter 7, the Court finds that the UST's motion is well taken and should be granted. The Court shall grant the Debtor ten days from the date of this Order to convert her chapter 7 case to a case under chapter 13. Otherwise, her chapter 7 case shall be dismissed without further notice or hearing.

## FACTS

The Debtor filed a petition under chapter 7 of title 11 on July 6, 1995 (the "Petition Date").

### The Debtor's Credit Card Debts

The Debtor acknowledges that her debts "are primarily consumer debts" within the meaning of § 707(b). See Debtor's Amended Motion in Opposition to United States Trustee's Motion to Dismiss, at p. 2. Therefore, the sole issue before the Court is whether discharge of the Debtor's indebtedness would constitute a "substantial abuse" of chapter 7.

On the Petition Date, the Debtor owed a total of $60,356.87 on 16 credit card debts. By her own admission, the Debtor charged travel expenditures of $37,169.45 on her credit card accounts during the period from 1989 through 1995. See UST's Exhibit 1. The balance of the debt owed on the Debtor's credit card accounts represents interest on her credit card purchases. The Debtor testified that, during the three months prior to the Petition Date, she made credit card charges in the amount of $1,795.25 while on spring break. See UST's Exhibit 1.

The Debtor's only other debt was a secured claim in the amount of $16,943.85 owed to National City Complete Lease for a 1995 Buick Skylark.

### The Debtor's Income and Expenses

The Debtor has been steadily employed as a teacher for the past 27 years. She presently earns approximately $41,000.00 per year.

Although the Debtor testified that she has experienced problems with her vision in recent years, the Debtor's asserted visual problems have not prevented her from teaching or from traveling extensively throughout the United States. The Debtor did not provide any documentary evidence or expert testimony as to her medical condition.

The Debtor also testified that she may consider retirement in the near future.

The Debtor's budgeted monthly expenditures include a number of questionable items. First, the Debtor has budgeted $150.00 per month in telephone expense. According to the Debtor, she considers telephonic communication with a brother and a sister who live in different area codes to be a necessity. Second, the Debtor, who lives in a two-bedroom apartment, has budgeted $100.00 per month for "Home maintenance (repairs and upkeep)". The Debtor testified that this budgeted expenditure represents a monthly payment to a friend who cleans the Debtor's apartment. Third, the Debtor testified that she spends $96.00 per month on "Recreation, clubs, and entertainment, newspapers, magazines, etc.". Fourth, the Debtor has budgeted $245.00 per month for an expenditure categorized as "[r]egular expenses from operation of business, profession, or farm". According to the Debtor, this item represents expenditures for classroom supplies and a classroom library. Fifth, the Debtor testified that she has budgeted $160.00 per month for medical and dental expense, consisting of her yearly cost for the purchase of contact lenses and glasses. However, on cross-examination, the Debtor was unable to explain how her yearly purchase of contact lenses and two pairs of glasses could be reconciled with her claimed expense of $160.00 per month which totals $1,920.00 on a yearly basis.

## DISCUSSION
### APPLICABLE STATUTE

Section 707(b) of title 11 provides that:

[a]fter notice and a hearing, the court ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of

granting the relief requested by the debtor.

11 U.S.C. § 707(b).

## BURDEN OF PROOF

The UST bears the burden of proof on his motion by the preponderance of the evidence. *See In re Laury–Norvell* 157 B.R. 14, 17 (Bankr.N.D.Ohio 1993) (applying preponderance standard). Nevertheless, contrary to the Debtor's argument at trial, the UST need not establish that the Debtor has proceeded fraudulently or in bad faith. *See United States Trustee v. Harris,* 960 F.2d 74, 76 (8th Cir.1992) (stating that " 'substantial abuse' " could not be equated with " 'bad faith' " or " 'egregious behavior' ").

## WHETHER THE DEBTOR'S CASE REPRESENTS A SUBSTANTIAL ABUSE OF CHAPTER 7

The Court concludes that the Debtor's bankruptcy case should be dismissed as a "substantial abuse" of chapter 7 within the meaning of 11 U.S.C. § 707(b). *See In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989) ("Substantial abuse can be predicated on either lack of honesty or want of need.").

### The Debtor's Lack of Honesty

Here, as in *In re Grant,* the Debtor's accumulation of consumer debts far in excess of her ability to repay such debts provides evidence of her bad faith. *In re Grant,* 51 B.R. 385, 394 (Bankr.N.D.Ohio 1985). The Debtor's bankruptcy filing did not result from unforseen or catastrophic circumstances. Rather, as in *In re Krohn,* the Debtor has engaged in a "consistent pattern of living beyond [her] means". *In re Krohn,* 886 F.2d at 127. *See also In re McCormack,* 159 B.R. 491, 494 (Bankr.N.D.Ohio 1993). The Debtor charged travel expenditures of $37,169.45 on her credit card accounts during the period from 1989 through 1995. *See* UST's Exhibit 1. Despite the fact that the Debtor had accumulated substantial consumer debt by 1992, the Debtor continued to charge approximately $15,000.00 in travel expenditures on her credit cards during the period from 1993 through the Petition Date in June of 1995. At least $1,795.25 of these credit card charges for travel can be categorized as "eve of bankruptcy" spending. *See Wilson v. United States Trustee (In re Wilson),* 125 B.R. 742, 745 (W.D.Mich.1990) (concluding that Debtor's $2,854.00 in charges during the 90 days prior to bankruptcy, including purchase of airline tickets, supported a finding of substantial abuse under § 707(b)).

The Court further finds that the Debtor's budgeted expenditures for home maintenance and for medical and dental expense were "overstated with the intention of misrepresenting [her] financial picture". *In re Bryant,* 47 B.R. 21, 25 (Bankr.W.D.N.C. 1984); *see also In re Barnes,* 158 B.R. 105, 109 (Bankr.W.D.Tenn.1993) (concluding that debtors' did not schedule expenses in good faith); *cf. In re Dickerson,* 166 B.R. 480, 483 (Bankr.N.D.Ga.1993) (finding debtor's failure to list sales commissions as income evidenced bad faith).

### The Debtor's Want of Need

Moreover, the Debtor's circumstances do not indicate that she is needy. *See In re Wilson,* 125 B.R. at 746—47 (concluding that debtor's financial circumstances, which would have allowed for 32% repayment of unsecured creditors over 3 years, supported finding that Debtor was not needy).

The Debtor has been steadily employed as a teacher for the past 27 years and presently earns approximately $41,000.00 per year.

The Debtor's asserted visual problems have not prevented the Debtor from performing her job or from traveling throughout the United States. Therefore, the Court grants little weight to the Debtor's uncorroborated testimony on this score. *See In re Richmond,* 144 B.R. 539, 542 (Bankr. W.D.Okla.1992) (discounting debtors' unsupported testimony as to wife's illness where there was no evidence of sudden or extended illness); *cf. In re Helmick,* 117 B.R. 187, 190 (Bankr.W.D.Pa.1990) (discounting debtor's vague testimony as to temporary health problems).

Likewise, the Court declines to speculate as to the Debtor's future retirement plans. *In re McCormack,* 159 B.R. 491, 495 (Bankr. N.D.Ohio 1993); *cf. In re Tindall,* 184 B.R.

842, 846 (Bankr.M.D.Fla.1994) (finding § 707(b) dismissal warranted despite the fact that one debtor was retired and the other debtor was planning for retirement).

■ In reviewing the Debtor's budgeted monthly expenditures, the Court concludes that the Debtor can significantly reduce her monthly expenditures without depriving herself of food, clothing or other necessities. Although courts have permitted debtors a fair amount of discretion in budgeting monthly expenditures, a Debtor's subjective value judgment as to what constitutes an appropriate expense is not controlling on the Court. *See In re Krohn,* 886 F.2d at 127 (examining "whether [a debtor's] expenses [could] be reduced without depriving [the debtor] of adequate food, clothing, shelter and other necessities"); *see also Indus. Ins. Services, Inc. v. Zick (In re Zick),* 931 F.2d 1124, 1128 (6th Cir.1991) (affirming bankruptcy court dismissal under § 707(a) which dismissal was based, in part, on debtor's extravagent lifestyle); *cf. Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish),* 72 F.3d 298, 304 (3rd Cir.1995), *reconsideration denied,* (January 16, 1996) (noting, in the context of a student loan case, that one of the reasons consumer debtors may find themselves in bankruptcy court to begin with is their prepetition "'subjective value judgments'").

The Debtor's budgeted monthly telephone expenditure of $150.00 appears unreasonable. *See In re Grant,* 51 B.R. 385, 395 n. 20 (finding budgeted monthly telephone expenditure of $220.00 to be excessive); *see also In re Smith,* 157 B.R. 348, 351 (Bankr.N.D.Ohio 1993) (describing debtor's $100.00 monthly telephone bill for debtor and spouse as "unduly high").

Further, the Debtor's budgeted monthly payment of $100.00 to a friend who cleans her apartment can be eliminated without depriving the Debtor of the necessities of life. *See In re Wegner,* 91 B.R. 854, 859 (Bankr. D.Minn.1988) (questioning the necessity of debtors' retention of a cleaning person at a cost of $32.00 per week).

The Debtor's budgeted monthly expenditure of $96.00 for recreation and entertainment also strikes the Court as excessive.

*See In re Christie,* 172 B.R. 233, 236 (Bankr. N.D.Ohio 1994) (citing cases).

The Debtor's medical and dental expenses appear to be intentionally overstated. On cross-examination, the Debtor testified that she purchases contact lenses and two pairs of glasses per year. However, the Debtor was unable to explain how her expenditure for contact lenses and glasses could be reconciled with her claimed expense of $160.00 per month. *Cf. In re Kress,* 57 B.R. 874, 876 (Bankr.D.N.D.1985) (stating that "it [was] difficult to understand how one could spend $1,200.00 per year on contact lenses as the Debtor testified").

Finally, the Debtor's budgeted expenditure of $245.00 per month for classroom supplies and a classroom library should not be born by her creditors. *Cf. In re Nolan,* 140 B.R. 797, 803 (Bankr.D.Colo.1992) (finding that debtor's expenses, which included $325.00 monthly payment for son's private school, could be easily reduced to provide repayment to creditors): *In re Richmond,* 144 B.R. 539, 542 (W.D.Okla.1992) (stating that "[the] court [did] not believe that debtors' unsecured creditors should be required to contribute to the voluntary support of family members who [were] not dependents of the debtors").

In light of the foregoing, it is therefore

ORDERED that the UST's motion be, and it hereby is, granted. It is further

ORDERED that the Debtor be, and she hereby is, granted 10 days from the date of this Order to convert her chapter 7 case to a case under chapter 13. Otherwise, the Debtor's bankruptcy case shall be dismissed without further notice or hearing.