**In re James and Carla ADAMS, Debtors.**

**Bankruptcy No. 96–03316–KL3.**

United States Bankruptcy Court,
M.D. Tennessee.

Feb. 13, 1997.

Michael Combs, Nashville, TN, for debtors.

Barbara D. Holmes, Senior Attorney, United States Trustee's Office, Nashville, TN, for U.S. Trustee.

## MEMORANDUM

GEORGE C. PAINE, II, Chief Judge.

### I. INTRODUCTION

This matter is before the Court on the United States Trustee's Motion to Dismiss the Debtors' Chapter 7 case pursuant to section 707(b). After a full evidentiary hearing, the Court took the matter under advisement. For the reasons hereinafter stated, the Court denies the United States Trustee's Motion.

### II. FACTUAL BACKGROUND

The parties made the following factual stipulations:

1.  The debtors, James and Carla Adams, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on April 19, 1996.

2.  The § 341 meeting of creditors was first set for May 22, 1996. Upon motion of the U.S. Trustee, the deadline for filing a motion to dismiss under § 707(b) was extended to August 20, 1996. On August 20, 1996, the U.S. Trustee moved to dismiss this case under § 707(b).

3.  The debtors are individuals with primarily consumer debts.

4.  The debtors are both employed and there is no indication either debtor is likely to lose employment in the near future. Mr. Adams has been employed as a mechanic with Hoeganaes Company for more than 6 years. Mrs. Adams is a materials inspector with the State of Tennessee. She has been employed by the State for more than 11 years.

5.  On Schedule D, Creditors Holding Secured Claims, the debtors listed debts totaling $63,308.96. Of this amount, $43,138.50 is owed to NationsBank Mortgage Corporation and secured by a mortgage on the debtors' residence. A second mortgage is owed to The Money Store in the amount of $10,000. The debtors have reaffirmed both of these debts. The monthly payments are: $508 on the first mortgage and $160 on the second mortgage. The debtors also reaffirmed: a debt to Sears in the amount of $1,332.15 with a monthly payment of $20 and a debt with Old Hickory Employees Credit Union secured by the debtors' 1994 pickup with a monthly payment of $301.10.

6.  The debtors scheduled no priority unsecured debt. The debtors listed total unsecured debt on their original Schedule F of $27,616.19. The debtors amended their schedules to include additional unsecured debt of $2,050. The debtors also avoided the lien of Beneficial National Bank. The unsecured debtor [sic] of Beneficial National Bank increases the total, unsecured non-priority debt to $32,981.95.

7.  The debtors are eligible for Chapter 13 relief.

8.  Mrs. Adams year-to-date gross earnings for 10 months (according to her October 31, 1996 earnings statement) was $16,826.50 or average monthly gross income of $1,683. Her year-to-date deductions for federal income tax (FIT) and FICA totaled $3,602.75 or average monthly deductions of $361. Using these calculations, Mrs. Adams' monthly net income is $1,322.

9.  According to Mr. Adams' earning statement for November 3, 1996, his year-to-date gross income for 10 months was $40,619. Year-to-date deductions for 10 months for FIT, FICA, insurance and shoes totaled $12,890. Mr. Adams' net monthly income averages $2,733.

10.  Mr. Adams expected to receive a bonus of $300 in January, 1997. This additional income was not included in calculating the debtors' net income.

11.  The debtors' total income for 1993 (according to their 1993 tax return) was

$61,030. The debtors received an income tax refund for 1993 of $1,198. According to their 1994 income tax return, the debtors' income for 1994 was $62,299 and the debtors received a refund of $1,291. The debtors' tax return for 1995 reflects income of $61,015 and a refund of $1,354. No income tax refund was included in the calculation of debtors' net income.

The parties also stipulated to the admissibility of the following:

1. Debtors Statements and Schedules dated April 19, 1996.

2. Order Amending Petition dated October 2, 1996.

3. Debtors Income Tax Returns for 1993, 1994 and 1995.

4. Earnings statement of Carla Adams dated November 15, 1996 for pay period ending October 31, 1996.

5. Earnings statement of James Adams dated November 7, 1996 for pay period ending November 3, 1996.

6. Debtors' bank statements and canceled checks for January 20, 1995 through October 17, 1996.

7. Debtors responses to Interrogatories.

8. Transcript of debtors Rule 2004 Examination.

In addition to these stipulations, the Court heard proof at trial from the standing Chapter 13 Trustee, Henry E. Hildebrand, and from the debtors.

Mr. Hildebrand testified that he considered debtors' reasonable and necessary expenses to be $2340.[1] He assumed their income to be $4095 per month based on the stipulations filed by the parties. From the income, Mr. Hildebrand subtracted a $457.10 per month payment based on the debtors' hypothetical home equity loan for the purpose of replacing the roof that the debtors testified was a necessity. The Trustee also deducted an additional $600 from the debtors' income for any unanticipated expenses. This provided available disposable income of $1,247.90 per month. After deducting for Trustee commissions and attorney fees, the costs of the reaffirmed debt to the secured creditor for automobile payments, the total amount available to unsecured creditors in an 3 year plan would be nearly $30,200.96, an approximate 92% plan. Mr. Hildebrand also explained that if the debtors did not include the $250 per month they budgeted for care of their nondependent, elderly parents, then the debtors could fund over a 100% plan in three years.

The United States Trustee asserts that based on the alleged relative ease with which these debtors could pay *"something"* to their creditors, this case should be dismissed pursuant to § 707(b) because of the debtors' apparent lack of need of a Chapter 7 discharge. The United States Trustee relies on *In re Krohn*, 886 F.2d 123 (6th Cir.1989); *In re Duncan*, 201 B.R. 889 (Bankr.W.D.Pa. 1996); *In re Stallman*, 198 B.R. 491 (Bankr. W.D.Mich.1996); *In re Mastromarino*, 197 B.R. 171 (Bankr.D.Maine 1996); *In re Braithwaite*, 192 B.R. 882 (Bankr.N.D.Ohio 1996); *In re Snow*, 185 B.R. 397 (Bankr. D.Mass.1995); *In re Sanseverino*, 171 B.R. 46 (Bankr.N.D.Ohio 1994); *In re Lee*, 162 B.R. 31 (Bankr.N.D.Ga.1993); *In re Buntin*, 161 B.R. 466 (Bankr.W.D.Mo.1993); *In re Heller*, 160 B.R. 655 (D.Kan.1993); *In re McCormack*, 159 B.R. 491 (Bankr.N.D.Ohio 1993); *In re Hutton*, 158 B.R. 648 (Bankr. E.D.Ky.1993); *In re Fitzgerald*, 155 B.R. 711 (Bankr.W.D.Tex.1993); *In re Johnson*, 115 B.R. 159 (Bankr.S.D.Ill.1990); *In re Peluso*, 72 B.R. 732, 737 (Bankr.N.D.N.Y.1987); and *In re Grant*, 51 B.R. 385 (Bankr.N.D.Ohio 1985).[2]

---

1. The debtors estimated their reasonable and necessary monthly expenses to be $2,881.00. This figure included $200 per month for home maintenance that the Trustee deducted. In his calculation of their hypothetical Chapter 13, however, the Trustee added $457.10 per month as a hypothetical home equity loan for the debtors to replace their aging roof. The Trustee also deducted $401 that the debtors had listed as debt repayment. The Trustee increased the debtors' transportation expenses because he believed debtors had underestimated their reasonable and necessary expenses.

2. The Court reviewed each and every decision relied upon by the United States Trustee. The Court found that some of the cited case featured debtors who not just substantially but grossly abused the bankruptcy process in seeking a chapter 7 discharge. *See e.g., In re Duncan*, 201 B.R.

## III. Discussion

Section 707(b) provides as follows:

### § 707. Dismissal.

.    .    .    .    .

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

(Clark Boardman Callaghan, 1996).

The only issue to be decided by this case is whether § 707(b) requires the dismissal of this case when the debtor's current income would allow them to repay some of their debts either in a Chapter 13 or outside of bankruptcy. This question has revealed a split in authority over the correct interpretation of the term "substantial abuse," and whether that term mandates dismissal if it is

shown that a debtor has the ability to repay some or all of his/her debts.

Substantial abuse is not defined in the Bankruptcy Code. The legislative history of § 707(b) indicates that this section was added to the Code to prevent debtors who could pay their creditors from resorting to chapter 7 simply to avoid their obligations. *In re Duncan*, 201 B.R. 889 (Bankr.W.D.Pa.1996) (citing 4 Collier on Bankruptcy, para. 707.04 at 707–15 (Bender 1996)). Based on this history, numerous courts have held that a debtor's ability to fund a chapter 13 plan or otherwise repay a significant portion of their debts is a factor to be considered within the § 707(b) analysis. The disagreement is whether the ability to pay is an exclusive, primary, or equally-weighted factor given the totality of the circumstances on a case-by-case basis.

The Eighth and Ninth Circuits have found that if a debtor is able to repay his debts in the future, then granting a Chapter 7 discharge would constitute substantial abuse. *In re Kelly*, 841 F.2d 908 (9th Cir.1988); *In re Walton*, 866 F.2d 981 (8th Cir.1989); *Unit-*

889 (Bankr.W.D.Pa.1996) (debtor's gross income over $260,000 and has accumulated over $179,000 in consumer goods debt, including charging $14,697.63 in the year prior to filing on over 20 different credit cards); *In re Stallman*, 198 B.R. 491 (Bankr.W.D.Mich.1996) (debtor's failed "honesty test;" purchased objects such as new truck when he knew such were beyond his ability to repay, and had unreasonable expenses); *In re Mastromarino*, 197 B.R. 171 (Bankr.D.Maine 1996) (debtor's annual income exceeded $250,000; he had over $189,000 in unsecured debt and debtor was making post-petition payments to unknown entities); *In re Braithwaite*, 192 B.R. 882 (Bankr.N.D.Ohio 1996) (debtor owed more than $60,000 on 16 different credit cards, and between 1989 and 1995 charged $37,169.45 in travel expenses including $1,795.25 in the three months prior to filing while on spring vacation, and had some unreasonable expenses); *In re McCormack*, 159 B.R. 491 (Bankr.N.D.Ohio, 1993) (debtors charged vacations on credit cards; knowingly omitted credit card balance of $2,800 because had been used just prior to filing and debtors lacked honesty); *see also In re Schmidt*, 200 B.R. 36 (Bankr.D.Neb.1996); *In re Stewart*, 201 B.R. 996 (Bankr.N.D.Okl.1996); *In re Uddin*, 196 B.R. 19 (Bankr.S.D.N.Y.1996); *In re Vianese*, 192 B.R. 61 (Bankr.N.D.N.Y.1996); and *In re Jarrell*, 189 B.R. 374 (Bankr.M.D.N.C.1995).

Of those case with facts more similar to the debtors in this case, the courts that granted the

§ 707(b) motions tended to follow the Eighth and Ninth Circuit's *per se* rule. *See e.g., In re Heller*, 160 B.R. 655 (D.Kan.1993) (debtor's only debt was $40,000 in credit card charges, but debtor only had $749 in monthly disposable income. District court affirmed bankruptcy court § 707(b) dismissal based on ability to repay); *In re Matias*, 203 B.R. 490 (Bankr.S.D.Fla.1996) (adopting mathematical per se rule of Eight and Ninth Circuits); *In re Fitzgerald*, 155 B.R. 711 (Bankr.W.D.Tex.1993) (had $950 per month of disposable income available, and court followed rules set forth in *Kelly* and *Harris* ).

Several courts following *Krohn* have denied § 707(b) motions on facts similar to those presented in this case. *See e.g., In re Higuera*, 199 B.R. 196 (Bankr.W.D.Okl.1996) (debtor had approximately $1000 per month in disposable income, but plain meaning of term "substantial abuse" indicates that something more than an ability to repay is required before dismissing pursuant to § 707(b)); *In re Gentri*, 185 B.R. 368 (Bankr.M.D.Fla.1995) (debtor could have funded a 70% plan over 3 years, but court did not find that debtor's chapter 7 filing constituted substantial abuse); *In re Wilkes*, 114 B.R. 551 (Bankr. W.D.Tenn.1989) (court does not read *Krohn* to require dismissal just because a debtor has disposable income to fund a Chapter 13 plan—this is but one factor to consider).

ed States Trustee v. Harris (In re Harris), 960 F.2d 74 (8th Cir.1992). Those courts mandate dismissal whenever the debtors have the ability to fund a chapter 13 plan at a substantial level. This approach has been referred to as the *per se rule*. *See In re Ontiveros*, 198 B.R. 284 (C.D.Ill.1996). At the other extreme is the Fourth Circuit's "totality of the circumstances test," *In re Green*, 934 F.2d 568 (4th Cir.1991). The Fourth Circuit has held that a debtor's future ability to repay debts is but one of at least six factors to be considered when deciding whether "substantial abuse" exists. In addition to the solvency of the debtor, under the Fourth Circuit's approach, a court should consider the following five factors:

1. Whether the bankruptcy petition was filed because of a sudden illness, calamity, disability or unemployment;

2. Whether the debtor incurred any cash advances and made consumer purchases far in excess of his ability to repay;

3. Whether the debtor's proposed family budget is excessive or unreasonable;

4. Whether the debtor's schedules and statement of current income and expenses accurately reflect the true financial condition; and

5. Whether the petition was filed in good faith.

*Green*, 934 F.2d at 572.

■ The Sixth Circuit's decision in *In re Krohn*, 886 F.2d 123 (6th Cir.1989) has been termed the "hybrid approach." *See Ontiveros*, 198 B.R. at 289 ("hybrid approach … best resolves the tension between the conflicting policies of granting the debtor a fresh start while thwarting the abuse of consumer credit."). Under *Krohn* substantial abuse can be predicated upon either a lack of honesty or a debtor's lack of need for a chapter 7 discharge. These two benchmarks necessitate a consideration of all of the factors listed by the Fourth Circuit in *Green*. In other words, under the hybrid approach, § 707(b) permits dismissal solely based on the debtor's ability to repay debts, but § 707(b) does not mandate such a result.

Under the Sixth Circuit's approach, the goal of section 707(b) is to

allow[ ] a bankruptcy court to deal equitably with the unusual situation where an unscrupulous debtor seeks to enlist the court's assistance in a scheme to take unfair advantage of his creditors; it serves notice upon those tempted by unprincipled accumulation of consumer debt that they will be held to at least a rudimentary standard of fair play and honorable dealing.

*Krohn*, 886 F.2d at 126. Within the context of these benchmarks of honesty and need, a bankruptcy judge should exercise discretion on a case-by-case basis given the totality of the circumstances. The Court in *Krohn* explained:

In determining whether to apply § 707(b) to an individual debtor, then, a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. Substantial abuse can be predicated upon either lack of honesty or want of need.

*Krohn*, 886 F.2d at 126. The Court, therefore will first inquire into the debtors honesty in this bankruptcy case, and then determine whether they are in need of a chapter 7 discharge.

### 1. Honesty

*Krohn* did not provide an exhaustive list of factors to be consulted in determining a debtor's honesty, but did recommend that a judge consider "the debtor's good faith and candor in filing schedules and other documents, whether he has engaged in "eve of bankruptcy purchases," and whether he was forced into Chapter 7 by unforeseen or catastrophic events." *Id.*

■ In their 2004 examination, and while testifying at the § 707(b) hearing, the Adams explained their financial difficulties. Their

story was one very typical to most honest but unfortunate debtors—a downward spiral that careened out of control by using one credit card to try and catch up on other credit cards. The United States Trustee was unable to point to any dishonest representations made by the debtors in their statement, schedules or petition. The Court was completely satisfied, given the character and demeanor of the debtor/witnesses that they were forthcoming and honest in all of their dealings with this court and with their creditors. The few adjustments made by the Chapter 13 Trustee to their expenses were minor, and in one instance the Chapter 13 Trustee adjusted their expenses upward. The debtors testified honestly and openly, and the Court found their testimony to be extremely credible.

The Court found that these debtors lived frugally. They have very few entertainment expenses, and some of the ones that they did have (*Reader's Digest* and *Guidepost* magazines), they had already discontinued in an effort to save additional funds. They have worked consistently, and have shared what little they have to try and help support needy, elderly parents on fixed incomes. Their canceled checks show that they shopped only when a need arose, and perhaps the only unnecessary expense was Mrs. Adams cigarettes.[3] Although the United States Trustee did not offer any proof of what the Adams' used their credit cards for, Mrs. Adams explained in the 2004 examination that they received cash advances on one card to try and pay another card, and that they were constantly running to Western Union to send money to creditors to try and stay current. The Court found no evidence of "eve of bankruptcy" purchases. In fact, the debtors had not been using the credit cards for several months prior to filing.

Although there does not appear to be any one major calamity which moved these debtors into chapter 7, a series of events does seem to have contributed. Mrs. Adams required an unexpected surgery that brought

on unforeseen expenses; the debtors were contributing to the support of elderly parents; Mr. Adams had enjoyed larger paychecks while working more overtime, but then was not able to work as many overtime hours. Despite the absence of a catastrophic event that pushed the debtors toward bankruptcy, the Court does not find that these debtors ran up their consumer debt while knowing there was no way to honor their agreements with their creditors. In fact, the debtors did try to arrange a slow pay agreement with some creditors.

Under the *Krohn* analysis, the Court finds that these debtors most certainly pass the "honesty test." The second consideration is the debtors' need for a chapter 7 discharge.

### 2. Need of a Discharge

*Krohn* listed ability to pay as one of the factors to be consulted in determining need.

a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Krohn,* 886 F.2d at 126–27.

The Chapter 13 Trustee testified that, based on the information provided to him, the debtors had approximately $1,247.90 per month in disposable income to fund a chapter 13 plan. However, the debtors testified that several circumstances may reduce this figure. Both debtors drive considerable distances to

---

**3.** The United States Trustee suggested that Mrs. Adams retention of a cellular phone was an unnecessary expense or luxury. Mrs. Adams testified that her job requires her to cover a 26 county area in Tennessee. Because she travels alone, Mrs. Adams explained that she had the phone for security and to add convenience to her job. In this day and time, for a female traveling alone, the Court cannot view this expense as a luxury or unnecessary.

and from work daily,[4] and one of their vehicles is a 1989 Honda Civic with over 175,000 miles. The debtors have made no provisions to repair or replace this car when it inevitably becomes necessary. Furthermore, there was evidence that their income level may decrease in the future due to a possible change of employment.[5] However, even if the car did not need to be replaced, and the income level remained constant, the court cannot find that the ability to repay militates in favor of a finding of substantial abuse. This factor, standing alone, may permit dismissal under *Krohn*, but it does not mandate that result.[6]

In this case, these debtors are not living an exorbitant lifestyle; they have very few unnecessary expenses; they have dealt honestly with this court and with their creditors, and they have made attempts to try and repay their creditors. Their debt is not the result of wildly irresponsible behavior and is very typical to most debtors who get caught sucked under a slow rising tide of debt.[7]

■ This Court is following the teachings of *Krohn*. Section 707(b) is not designed to punish debtors simply because they are discharging their debts when they possess disposable income to fund a chapter 13 plan.

This statutory provision is competing with the overriding policy to provide the honest but unfortunate debtor with a fresh start. Section 707(b) should only be used to thwart "unscrupulous debtor[s] seek[ing] to enlist the court's assistance in a scheme to take unfair advantage of [their] creditors." *Krohn*, 886 F.2d at 126. These debtors do not qualify as unscrupulous or unprincipled in their dealings with their creditors.

## IV. CONCLUSION

Accordingly, the Court hereby denies the United States Trustee's Section 707(b) motion.

It is, THEREFORE, so ordered.

---

**4.** Mr. Adams travels 76 miles round trip every day to work, and Mrs. Adams drives approximately 26 miles round trip to her job. Both debtors drive both vehicles, but Mr. Adams tries to drive the older model car more often because it gets better gas mileage.

**5.** Mrs. Adams testified that she feared losing her job with the State of Tennessee due to the current atmosphere of downsizing of state government. Mr. Adams' job involves dangerous circumstances, and he hopes to take a safer job closer to his home that may involve slightly less pay.

**6.** Other support for the proposition that the availability of disposable income alone is not enough to warrant a § 707(b) dismissal can be found in the legislative history.

This section [707(b)] does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13 in lieu of the remedy of bankruptcy.

*U.S.Code Cong & Admin.News 1978*, pp. 5880, 6336. Furthermore, within the statute itself, a presumption in favor of relief is granted to the debtor: "[t]here shall be a presumption in favor of granting the relief requested by the debtor." Finally, as the court in *In re Higuera*, 199 B.R. 196, 199–200 (Bankr.W.D.Okl.1996) noted, the plain meaning of the term "substantial abuse" should be acknowledged in interpreting section § 707(b). "[S]ubstantial is defined as 'belonging to or involving essential right, or the merit of the matter'; 'of ample considerable amount, quantity, or dimensions.'" Abuse is defined as "application to a wrong or bad purpose; a deceitful act; maltreatment or ill usage." *Id.*

When considering the true meaning of the words .. it becomes evident that when used together, the term demonstrates that evidence of some fundamental deceit or bad faith on the part of the debtor must exist to warrant dismissal under section 707(b).

*Id.*

**7.** There was absolutely no proof in the record to indicate over what length of time these debts were incurred, only that the debts were not the result of "eve of bankruptcy" purchases.